■ In the Matter of ARDOR MANAGEMENT CORP., Appellant, v DIVISION OF HOUSING AND COMMUNITY RENEWAL OF THE STATE OF NEW YORK et al., Respondents. — In a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent Division of Housing and Community Renewal of the State of New York, dated November 12, 1982, petitioner appeals from a judgment of the Supreme Court, Nassau County (Young, J.), entered November 3, 1983, which dismissed the petition to the extent that it attacked the constitutionality of the Emergency Tenant Protection Act, and insofar as petitioner claimed that the Emergency Tenant Protection Act was not applicable to the subject premises.

Judgment affirmed, with costs.

On April 22, 1980, the City Council of the City of Glen Cove enacted a resolution adopting the Emergency Tenant Protection Act in that municipality, and ever since that time the respondent Division of Housing and Community Renewal has administered the act, and the regulations promulgated pursuant to it, with respect to the subject building (L 1974, ch 576, § 4, amd L 1980, ch 69, § 4). On or about September 29, 1982 the petitioner filed with the respondent division the property maintenance and operations cost survey schedule required by the Nassau County Rent Guidelines Board from landlords subject to the Emergency Tenant Protection Act. On the schedule file, the petitioner stated the "Year of construction" of the subject building as "1971". The tenant filed a complaint with the respondent Division asserting that she had been overcharged rent; in its answer to the complaint, the petitioner defended on the merits and raised no objection as to jurisdiction. On November 12, 1982, the respondent Division issued an order and determination, which held, *inter alia,* that the tenant had been overcharged the sum of $680.71. On December 30, 1982, the petitioner requested reconsideration, arguing for the first time that the subject building itself was exempt from the Emergency Tenant Protection Act, on the ground that the permanent certificate of occupancy had not been issued prior to January 1, 1974. Upon reconsideration, the Division found that the building was not exempt from the Emergency Tenant Protection Act on the ground that "[t]he record from [the] City Council and Mayor on file with this Division shows that the City Council and Mayor deemed this building to have been constructed prior to January 1, 1974 and therefore subject to the City Council's Resolution under the Emergency Tenant Protection Act. Based thereupon the Division has administered the regulation of rents in this building, and continues to do so".

The petitioner then commenced the instant proceeding to set aside the respondent Division's determination, arguing, *inter alia,* that the subject building was not subject to the Emergency Tenant Protection Act because it was completed after January 1, 1974, and that the Emergency Tenant Protection Act was unconstitutional. The respondent Division, in its answer to the petition, asserted that its determination was made in accordance with the Emergency Tenant Protection Act and the regulations promulgated thereunder, and that its determination was neither arbitrary, capricious nor unreasonable, and was a valid exercise of its discretion. The answer then referred to an affidavit of Steven Misiakiewicz, the Building Department Administrator of the City of Glen Cove. In his affidavit, Misiakiewicz

deposed that he was responsible for and made periodic inspections during the construction and completion of the subject building; that pursuant to an inspection made by him, a temporary certificate of occupancy was issued on November 1, 1973, certifying that the superintendent's apartment was substantially completed in accordance with the plans and specifications and was ready to be occupied; that on November 16, 1973, pursuant to various inspections made by him, two temporary certificates of occupancy were issued certifying that 31 apartments on the first floor, 23 apartments on the second floor, 18 apartments on the third floor and 15 apartments on the fourth floor had been completed in accordance with the approved plans and specifications and were ready for occupancy; that on November 28, 1973, he issued a temporary certificate of occupancy certifying that 24 other various apartments on the first, second, third and fourth floors were completed in accordance with the plans and specifications and were ready for occupancy; that on December 14, 1973, he issued a further temporary certificate of occupancy certifying that all the 176 apartments in the building had been completed in accordance with the approved plans and specifications and the building permit, and were ready to be occupied; that in addition, upon information and belief and to the best of his memory, many of the apartments at the time of the issuance of this temporary certificate of occupancy were in fact occupied; that on July 31, 1974 he issued a final certificate of occupancy, certifying that the entire project was substantially completed in accordance with the approved plans and specifications; that the fact that the final certificate of occupancy was not issued until July 31, 1974 did not indicate that the building was not completed on December 14, 1973 for all intents and purposes; that the reason that the final certificate of occupancy was not issued until a later date was that due to the time of year certain minor outside items which had to be completed before he could issue the certificate had not been completed; and that the only outstanding items on December 14, 1973 were certain minor items such as cleaning out the parking field dry wells, the planting of grass on the slopes, and the work remaining on the retaining walls and grading.

In support of the petition and the contention that the subject building was not completed prior to January 1, 1974, petitioner submitted certain documents showing that the installation of heating and plumbing systems in the subject building apparently had not been completed until October 1, 1975; that a fuel tank application for the subject building had been made on December 14, 1973; and that as late as June 21, 1974, a final

certificate of occupancy could not be issued to the subject building because it did not have "(2) 20' foot radii on (1) 40' foot driveway opening on west side of Brewster St. 295 feet S/O Cottage Row as per approved 239-K plan".

On or about June 15, 1983, the Attorney-General cross-moved for an order dismissing so much of the petition as attacked the constitutionality of the Emergency Tenant Protection Act.

Special Term dismissed the petition to the extent that it attacked the constitutionality of the Emergency Tenant Protection Act, and insofar as it claimed that the Emergency Tenant Protection Act was not applicable to the subject premises.

Section 5 (subd a, par [5]) of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) exempts from regulation "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four". The regulations promulgated pursuant to the act also exempt from the operation of the act, "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January 1, 1974" (9 NYCRR 2500.9 [e]). In construing the word "completed" contained in the act and regulations, the agency's interpretation of the word is entitled to great deference inasmuch as it is charged with administering the act and regulations; if the agency's interpretation is rational it should be upheld (see *Udall v Tallman,* 380 US 1; *Matter of Bernstein v Toia,* 43 NY2d 437; *Matter of Romanow v City Rent & Rehabilitation Admin.,* 31 AD2d 899). The Division's determination that the subject building had been "completed" prior to January 1, 1974, and was thus not exempt from regulations under the act, is rational and must be upheld. In *State of New York v Lundin* (60 NY2d 987, 989), a case involving claims against a general contractor and architect and what triggers the Statute of Limitations, the Court of Appeals recently stated that "construction may be complete even though incidental matters relating to the project remain open". Respondent Division's interpretation of the word "completed" is also consistent with section 2 (subd [f], par [7]) of the Code of the Rent Stabilization Association of New York City, Inc., which provides that: " 'Dwelling Units Covered by this Code' * * * (7) are located in a building for which an initial certificate of occupancy as a dwelling unit, whether of a temporary or permanent nature was obtained between March 10, 1969 and December 31, 1973, both dates inclusive".

The facts here bear out the Division's conclusion that the subject building was "completed" prior to January 1, 1974, within the meaning of the act. With regard to the petitioner's

argument that the date upon which a permanent certificate of occupancy is issued determines the date upon which a building is deemed to be "completed" within the meaning of the act, it must be noted that the act makes no reference whatsoever to a permanent certificate of occupancy; had the Legislature intended a building to be deemed completed when a permanent certificate of occupancy was issued, it could have easily written that into the statute (see McKinney's Cons Laws of NY, Book 1, Statutes, § 232). Finally, we also reject the petitioner's argument that the Emergency Tenant Protection Act contravenes the Fifth Amendment to the United States Constitution (see *Benson Realty Corp. v Beame,* 50 NY2d 994; *Matter of Freeport Randall Co. v Herman,* 83 AD2d 812, affd 56 NY2d 832). Lazer, J. P., Brown, Boyers and Eiber, JJ., concur.