OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
In a suit by a construction project owner against a general contractor and architect for defective construction and design, the cause of action generally accrues upon the completion of construction, meaning completion of the actual physical work. Application of that well-established principle cannot be avoided in this case by the two arguments advanced by appellant, the owner.
First, for Statute of Limitations purposes the date of the final certificate is not controlling. In the contract before us, responsibility for issuance of the final certificate rested with the owner, which sets this case apart from Board of Educ. of Tri-Valley Cent. School Dist. v Celotex Corp. (88 AD2d 713, affd 58 NY2d 684). Where, as in Tri-Valley, the contract requires the architect to conduct inspections to determine completion dates and issue a final certificate, issuance of that certificate represents a significant contractual right of the owner and concomitant obligation of the architect. The architect’s issuance of the certificate marks the completion of its performance and the point when the Statute of Limitations starts to run for a breach of its contractual undertaking. However, that same result does not obtain when the owner itself controls issuance of the final certificate. The final certificate in such circumstances may indicate the owner’s acceptance of the work for purposes of contractual guarantees or equitable price adjustments, but it does not represent completion of the contractual obligations of the architect or general contractor for purposes of triggering the Statute of Limitations.
Second, construction may be complete even though incidental matters relating to the project remain open. Continuation of the owner’s relationship with the architect and contractor beyond July 31, 1973 — the key Statute of Limitations date — will not of itself serve to extend construction completion. With respect to the architect, the *990 ongoing relationship related to postconstruction price negotiations, and not performance of its contractual duties. There is no indication in this record that the architect was asked to participate in any final inspection, and such inspection was in any event the responsibility of the owner’s project manager. While the architect submitted a bill during 1974 for unspecified services in the amount of $263.58, given the magnitude of the project and the other undisputed facts such a minimal amount of work, even if performed after July, 1973, could not alter the fact that the project was demonstrably complete before July, 1973.
Similarly, with respect to the contractor, the relationship after July, 1973 concerned prices to be paid for work already completed and not further construction. While the amount of $175 worth of interior trim on the project was held open beyond July, 1973, this did not reflect a lack of construction completion but related to the process for making equitable adjustments. Appellant emphasizes that on certain forms the contractor indicated that final payroll periods for itself and its subcontractors ended on dates after July 31, 1973. These forms however, do not specify that any work was actually done after July 31, 1973, and there is no evidence that any work was done; no amounts are charged to appellant on these forms. Finally, appellant argues that the contractor did not certify the change order work as 100% complete until Payment Application No. 78, which covered the period ending July 31,1973, six years to the day before the summons was served on the contractor. But the previous application for payment, covering a period ending May 15, 1973 (No. 77), indicated that the change order work was already 99% complete, leaving only a small amount which was done between May 15 and July 31.*
To be measured against these arguments are the uncontested facts that long prior to July, 1973 appellant had fully occupied the building in suit, it had assumed responsibility for building security, and it had permitted fire and *991 liability insurance carried by the contractor to be canceled. Given these facts, it is significant that in all the volumes of affidavits and exhibits submitted to us, including the affidavit of appellant’s assistant construction director fully familiar with the project, there is no mention of any actual ongoing construction after July 31, but only paperwork relating to price adjustments and other incidental matters from which it is surmised that construction continued.
On the point that construction was complete before July 31, 1973, there is no genuine triable issue of fact.

 The dissent relies on what we would characterize as payment applications, concluding that they represent work done after July 31,1973. But the differences in the amounts listed on the applications are explained by equitable adjustments, supplemental agreements and retainage — all of which concerned additional moneys to be paid rather than work performed.