(880 P.2d 789)
No. 69,706

EDWARD KRAEMER & SONS, INC., *Appellee*, v. CITY OF OVERLAND PARK; CITY OF MERRIAM; and KANSAS DEPARTMENT OF TRANSPORTATION, *Appellants*.

Opinion filed September 9, 1994.

*Theresa A. Pasek*, staff attorney, and *Michael B. Rees*, chief counsel, of Kansas Department of Transportation, for appellants.

*R. W. Miller, Stephen R. Miller, Weston A. Sechtem,* and *Frederick J. Ernst,* of Miller Law Firm, P.C., of Kansas City, Missouri, for appellee.

Before BRAZIL, P.J., ELLIOTT and ROYSE, JJ.

ROYSE, J.: This case arises out of a highway construction contract. In June 1985, the Cities of Overland Park and Merriam (Cities) awarded Edward Kraemer & Sons, Inc., (Kraemer) a contract for road reconstruction along I-35. After the work was completed, a dispute arose over the amount which the Cities owed Kraemer. Kraemer sued the Cities and obtained judgment. The Cities have appealed, raising two principal issues: (1) whether Kraemer's action was barred by the statute of limitations; and (2) whether the trial court erred in assessing prejudgment interest against the municipalities.

## FACTS

In early 1985, bids were solicited for a road reconstruction project along I-35 and 75th Street in the cities of Overland Park

and Merriam. Kraemer submitted the low bid and was awarded the contract on May 3, 1985.

Problems arose in the execution of the project documents. Kraemer executed the contract on May 13, 1985, but the Cities did not sign the contract until June 17, 1985. The contract provided that a notice to proceed had to be issued before Kraemer could begin the work and required the Cities to issue the notice to proceed within five days after executing the contract. The notice to proceed, however, was not issued by the Cities until July 16, 1985. Kraemer began work on the project immediately after the Cities issued the notice to proceed.

The contract terms set a "target date" of July 15, 1987, for completion of the project. The "target date" was designed to limit the time that the 75th Street interchange would be closed to traffic. The target date effectively left the contractor 456 days to perform the final phases of the project. Damages of $12,000 per day were to be assessed for each day that the work extended past the target date. Incentive payments of $12,000 per day were to be awarded for each day that work was completed before the target date, up to a maximum of 40 days.

As construction proceeded, Kraemer repeatedly asked for a change in the target date to reflect the Cities' delay in issuing the notice to proceed. Because no change in the target deadline was forthcoming, Kraemer had to adopt an accelerated work schedule to meet the target deadline. Kraemer substantially completed the project by July 15, 1987, using 387 days to complete the final phases of the project. After minor follow-up work, the Kansas Department of Transportation (KDOT) certified completion of the project on May 31, 1988.

The contract provided that when the contractor completed the project, the project engineer would certify the compensation due the contractor. The final pay estimate indicated that $100,682.38 was owed to Kraemer. The estimate did not allow any payment to Kraemer pursuant to the incentive clause in the contract. In response, Kraemer asserted a claim for damages from the delayed notice to proceed, made a claim for incentive bonuses, requested immediate payment of the $100,682.38, and refused to approve the final pay estimate which included a release of all claims. The

Cities refused to release any amount because Kraemer had not signed the final pay estimate.

On May 13, 1991, Kraemer filed suit against the Cities to recover the amount the Cities had determined was due under the contract, the costs associated with the accelerated work schedule, and the incentive payments lost due to the Cities' delay in issuing the notice to proceed. The Cities filed a motion for dismissal or partial summary judgment, claiming that Kraemer's cause of action was barred by the statute of limitations. The district court denied the motion, and the case proceeded to a jury trial. The jury awarded Kraemer $456,000 in incentive payments, but it awarded no damages for costs associated with the accelerated work schedule. Kraemer's claim for the amount due under the contract was dismissed because the Cities had paid that amount before trial. At a post-trial hearing the district court awarded Kraemer prejudgment interest totaling $270,760 on the incentive payments and the contract amount that the Cities had retained.

## STATUTE OF LIMITATIONS

K.S.A. 60-511(1) provides a five-year statute of limitations for a cause of action based on a written contract. The period for filing suit begins to run when the cause of action accrues. K.S.A. 60-510. The question in this case is: When did Kraemer's cause of action accrue?

According to the Cities, the alleged contract breach occurred in May 1985, when the notice to proceed was delayed. The Cities contend Kraemer had five years from that date to bring suit. Because Kraemer did not file its suit until May 1991, the Cities conclude that Kraemer's claims were time barred.

Kraemer responds that the breach in May 1985 was merely a technical breach. It contends that no material breach of the contract occurred until 1989, when the Cities refused to honor Kraemer's demand for payment. Kraemer concludes that its filing of the lawsuit in 1991 was well within the five-year statute of limitations.

The district court adopted the view urged by Kraemer, holding that Kraemer's cause of action did not accrue until the contract was substantially completed and Kraemer's demand for payment

was refused. The district court's interpretation of the statute of limitations for contract actions is a conclusion of law. This court's review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The question when a cause of action accrues for breach of a construction contract has never been directly addressed in Kansas. In other contexts, however, the general rule is that:

"a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful conclusion." *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, Syl. ¶ 7, 470 P.2d 797 (1970).

See *Pizel v. Zuspann,* 247 Kan. 54, 76, 795 P.2d 42 (1990); *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 87, 716 P.2d 575 (1986); *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 410, 582 P.2d 244 (1978); *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 548, 545 P.2d 312 (1976).

Kraemer argues that in the context of a complex construction contract, the ability to pursue a cause of action to a successful conclusion does not occur until the contract is substantially completed. A number of jurisdictions have specifically adopted such a rule.

In *Santucci Construction Co. v. Danville,* 128 Ill. App. 3d 954, 471 N.E.2d 1000 (1984), the Illinois Court of Appeals held that where a construction contract is involved, the statute of limitations does not ordinarily begin to run against a contractor's claim for payment before completion of the contract. Similarly, in *State v. Lundin,* 60 N.Y.2d 987, 471 N.Y.S.2d 261, 459 N.E.2d 486 (1983), the New York Court of Appeals stated the cause of action in a construction contract generally accrues upon completion of the actual physical work. See *Millgard Corp. v. McKee/Mays,* 831 F.2d 88, 90-91 (5th Cir. 1987); *Pioneer Roofing Co. v. Mardian Constr. Co.,* 152 Ariz. 455, 463, 733 P.2d 652 (Ct. App. 1986); *Godde v. Wood,* 509 S.W.2d 435 (Tex. Civ. App. 1974); 13 Am. Jur. 2d, Building and Construction Contracts § 114.

The courts have listed a number of reasons for adopting this rule. First, the undertaking of a contractor on a construction project is a single endeavor and, thus, a statute of limitations

should not begin to run until completion of that endeavor. See *Santucci*, 128 Ill. App. 3d at 957; *Godde*, 509 S.W.2d at 441; Note, *Developments in the Law, Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1209 (1950). Second, in light of the size, complexity, and length of a construction project, the determination when a cause of action accrues should not depend upon the existence of an inconsequential claim based upon a technical breach of duty, but upon the existence of a practical remedy. *Haslund v. Seattle*, 86 Wash. 2d 607, 620, 547 P.2d 1221 (1976). Third, when a contract calls for a final accounting and contemplates resolution of claims, a breach does not occur until a final accounting or demand for payment is made. See *Zook Brothers Constr. Co. v. State*, 171 Mont. 64, 70, 556 P.2d 911 (1976).

The rule that a contractor's claim for payment begins to run upon completion of the project, and the reasons given for that rule, are in accord with the rules applied in Kansas. As noted earlier, generally a cause of action accrues when the plaintiff "could first have filed and prosecuted his action to a successful conclusion." *Pizel*, 247 Kan. at 76. In most contract cases, that means the cause of action accrues when the contract is breached. *Price, Administrator v. Holmes*, 198 Kan. 100, 106, 422 P.2d 976 (1967); *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 507, 337 P.2d 986 (1959); see *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1 (1969). Thus, a claim for improper installation of plumbing fixtures accrued when the installation was completed. *Crabb*, 184 Kan. at 508. A claim for payment of funds withheld by a public officer from his successor accrued at the end of the officer's term or when a demand for return of the funds was refused. *State, ex rel., v. Masterson*, 221 Kan. 540, 547, 561 P.2d 796 (1977). A claim for breach of an employment contract accrued when it became apparent to the employee that the employer was not going to honor the agreement. *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 751, 822 P.2d 64 (1991).

In regard to an action for the recovery of money, the cause of action does not accrue before payment is due. There must be a right, a duty, and a default. *Bruner v. Martin*, 76 Kan. 862, 865, 869, 93 Pac. 165 (1907); 1 Am. Jur. 2d *Actions* § 62 (1994); see *Cole v. Emerson*, 133 Kan. 442, 1 P.2d 249 (1931); *Heery v.*

*Reed,* 80 Kan. 380, 102 Pac. 846 (1909); *Harvester, Inc. v. Good-year Tire & Rubber Co.,* 4 Kan. App. 2d 363, 366-67, 606 P.2d 498 (1980); 1 Corman, Limitation of Actions § 7.2.1 (1991); 4 Corbin on Contracts § 951 (1951); 51 Am. Jur. 2d, Limitation of Actions § 126.

The analysis set forth in *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, is instructive. Holder was employed to sell and oversee the construction of steel buildings. His compensation included a payment of $1,000 per month plus commissions. Commissions were due only after a project was completed and paid for by the customer. After his employment was terminated, Holder claimed that his employer wrongfully withheld his commissions.

In determining when Holder's cause of action accrued, the court reiterated the rule that "a cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement." 224 Kan. at 410. Based on the circumstances presented, the court concluded that Holder could not have successfully maintained an action until all his projects had been completed and paid for.

In the present case, Kraemer could not have successfully maintained an action immediately following the Cities' technical breach in May 1985. At the time, it was purely a matter of speculation whether the technical breach by the Cities would affect Kraemer's performance, whether Kraemer would complete the project within the time allowed, whether the Cities would make an adjustment in the target date, and whether the Cities would allow Kraemer incentive payments. As of May 1985, it must be remembered, no payments from the Cities were due.

The Cities suggest Kraemer could have filed an action for specific performance to compel issuance of the notice to proceed. Specific performance was not a practical remedy. First, courts are generally reluctant to order specific performance of a construction contract. See 13 Am. Jur. 2d, Building and Construction Contracts § 112. Second, the time required to obtain the equitable remedy would have only delayed further the start of the project. Finally, any equitable remedy could not have resolved the question whether Kraemer was entitled to incentive payments.

The earliest time that Kraemer could have pursued its cause of action to successful completion was after the project was completed. Under the terms of the contract, no payments were due until (1) the work was completed, (2) the engineer certified the amount due Kraemer, and (3) Kraemer signed the final pay estimate containing a release of all claims. Therefore, Kraemer's cause of action for breach of contract did not accrue until Kraemer completed the work and demanded the incentive payments and the Cities rejected the demand. This conclusion is consistent with the Kansas cases and with the general rules regarding construction contracts accepted in other jurisdictions. This conclusion minimizes the risk that construction contract disputes will produce repetitive, piecemeal litigation.

The district court correctly interpreted and applied the statute of limitations in the present case. The district court did not err in denying the Cities' motion for dismissal or partial summary judgment.

## PREJUDGMENT INTEREST

The Cities argue that the district court erred in assessing prejudgment interest against them, claiming that (1) there is no statutory authority for awarding prejudgment interest against a municipality and (2) because Kraemer's claim was for unliquidated damages, prejudgment interest was inappropriate.

In assessing prejudgment interest against the Cities, the district court relied on K.S.A. 16-201. That statute provides: "Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due." Whether the district court correctly interpreted the statute is a question of law. This court's review of a district court's conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d at 674.

The Cities rely on *Brown v. State Highway Commission,* 206 Kan. 49, 476 P.2d 233 (1970), to support their claim that there is no statutory authority for awarding prejudgment interest against a municipality. *Brown* was an action for damages resulting from a defect in a state highway. The court ruled that plaintiff was not entitled to recover postjudgment interest against the State Highway Commission. The court reasoned that K.S.A. 68-419

(Corrick), which authorized the action against the State Highway Commission, did not explicitly waive the State's immunity from liability for interest.

The Cities point out that K.S.A. 1972 Supp. 16-204 was amended in response to *Brown* and now includes a specific provision for awarding postjudgment interest against governmental defendants. In contrast, the Cities argue, K.S.A. 16-201 contains no explicit reference to governmental creditors. Absent an express statutory reference, the Cities conclude, prejudgment interest cannot be awarded against governmental creditors.

The same arguments made by the Cities were considered and rejected by our Supreme Court in *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, 532 P.2d 1081 (1975). In *Shapiro*, the widow of a state employee obtained a judgment for accidental death benefits wrongfully withheld by the system. Subsequently, she sought interest on the death benefits for the period they were wrongfully withheld. The district court denied her request, and she appealed. The Supreme Court reversed.

In *Shapiro*, the court provided an instructive examination of *Brown*. The court noted that the rationale of *Brown* was based on the doctrine of sovereign immunity. *Brown* applied the rule that statutes waiving sovereign immunity must be strictly construed. Because the statute authorizing an action against the State Highway Commission did not waive immunity from interest, *Brown* concluded no interest could be awarded. 216 Kan. at 355.

The court determined in *Shapiro* that the *Brown* holding did not control the claim for interest against the system because the doctrine of sovereign immunity should not apply to a claim based upon the breach of an express contract. 216 Kan. at 355.

The rejection in *Shapiro* of a sovereign immunity rationale is particularly appropriate in this case, in light of the passage of the Kansas Tort Claims Act. Liability is now the rule, immunity the exception. *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984).

*Shapiro* also examines and rejects the rule that under sovereign immunity a governmental entity is not liable for interest on its obligations unless a statute expressly so provides:

"The common-law rule that the state should not be required to pay interest on its just debts is untenable in our times. In our judgment the loss of the use of money, whether occasioned by the delay or default of an ordinary citizen or of the state or one of its political subdivisions, ought to be compensated. This is especially true in those situations where the state has agreed by an express contract to pay retirement and death benefits to its employees and where it has been found to have wrongfully withheld the same. We see no justice in a rule which permits the state to retain for its use without interest money which it was legally obligated to pay over to a widow for her support." 216 Kan. at 357.

Even though a contractor's claim for compensation under a construction contract may not evoke the same response as a widow's claim for her support, the conclusion in *Shapiro* is equally applicable here:

"Where the state legislature has consented that one of its agencies may be sued on its express contracts, the waiver of sovereign immunity should extend to every aspect of its contractual liability including the right of the other contracting party to recover interest where it is customarily included as a part of the damages to be awarded for breach of contract." 216 Kan. at 357.

See also *Seneca Nursing Home v. Secretary, Etc.*, 604 F.2d 1309, 1315 (10th Cir. 1979) (prejudgment interest allowed when SRS breached an express contract with a nursing home); *First Nat'l Bank v. Wabaunsee County Comm'rs*, 145 Kan. 552, 66 P.2d 558 (county breached an implied contract for interest on warrants); K.S.A. 12-105b(c) (referring to interest due on claims against a municipality).

Finally, *Shapiro* makes clear that the Cities' reliance on K.S.A. 16-204 to interpret K.S.A. 16-201 is misplaced:

"We have not overlooked the fact that the 1973 legislature amended K.S.A. 16-204 to [provide for postjudgment interest against governmental bodies after July 1, 1973]. Although the statute is restricted to judgments rendered against the state on or after July 1, 1973, it does not expressly preclude the allowance of interest on claims or judgments based upon a liability of the state or its agencies arising from the breach of an express contract prior to that date." 216 Kan. at 358.

If the history of 16-204 teaches anything, it is that the legislature can and does sometimes modify statutes in response to judicial opinions. It is thus significant that the legislature has not chosen to change 16-201 in response to *Shapiro*.

The Cities' attempts to distinguish *Shapiro* are not persuasive. Just as was true of the system in *Shapiro,* the Cities are distinct legal entities which can sue and be sued. They have broad powers to make contracts. K.S.A. 12-101. The Cities do not suggest that they are immune from suit on this construction contract. See *Sanders v. State Highway Commission,* 211 Kan. 776, 779, 508 P.2d 981 (1973); *Kiewit & Sons' Co. v. State Highway Comm.,* 184 Kan. 737, 339 P.2d 267 (1959) (highway commission enjoyed no immunity from suit on express contracts for highway construction).

We have considered the Cities' argument that later cases limit or restrict the *Shapiro* holding. That argument is not persuasive. The cases cited by the Cities construe tax statutes, which have no relevance to the issues presented here. In any event, the Cities have acknowledged that the language of 16-201 is clear and unambiguous, leaving no room for judicial construction. See *Kilner v. State Farm Mut. Auto. Ins. Co.,* 252 Kan. 675, 682, 847 P.2d 1292 (1993). K.S.A. 16-201 is unqualified in allowing *creditors* to receive interest on money that becomes due.

The district court did not err in concluding that K.S.A. 16-201 authorized Kraemer to obtain an award of prejudgment interest against the Cities.

As their final issue, the Cities maintain that Kraemer's damages were unliquidated and therefore not properly the subject of prejudgment interest. The general rule of law in Kansas is that prejudgment interest is allowable on liquidated claims. "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." *Kilner v. State Farm Mut. Auto. Ins. Co.,* 252 Kan. at 686-87. The fact that a good faith controversy exists as to whether the defendant is liable for the money does not preclude a grant of prejudgment interest. *Crawford v. Prudential Ins. Co., of America,* 245 Kan. 724, 737, 783 P.2d 900 (1989). The award of prejudgment interest under K.S.A. 16-201 is a matter of judicial discretion subject to being overturned on appeal only when there is an abuse of discretion. *Miner v. Farm Bur. Mut. Ins. Co., Inc.,* 17 Kan. App. 2d 598, 616, 841 P.2d 1093 (1992), *rev. denied* 252 Kan. 1092

(1993). See *Farmers State Bank v. Production Cred. Ass'n of St. Cloud*, 243 Kan. 87, 102-103, 755 P.2d 518 (1988).

In this case, the amount due for incentive pay was expressly set by the contract at $12,000 for each day (up to 40) that the job was completed before the target date. The number of work days lost because of the delay in issuing the notice to proceed, as well as the number of days actually used by Kraemer in completing the project, could easily be counted. Thus, the amount due for incentive payment was a liquidated sum.

There is no serious question that the amount withheld by the Cities was a liquidated amount. The final pay estimate indicated that $100,682.38 was due to Kraemer. The Cities withheld payment of this amount for over two years after Kraemer's demand.

The Cities' argument regarding the amounts due Kraemer is no more than a claim that there was a controversy about whether the Cities were liable for the incentive payments. That there may have been such a controversy does not preclude an award of prejudgment interest.

Because there is evidence in the record to support the district court's determination with regard to the time when those amounts became liquidated, the Cities have not shown abuse of discretion. The decision of the district court in awarding interest against the Cities is affirmed.

Affirmed.