(935 P.2d 237)

No. 75,342

WESTERN VIDEO COLLECTORS, L.P., *et al., Appellants,* v.
MERCANTILE BANK OF KANSAS, *Appellee.*

—

Opinion filed
March 28, 1997.

*Gregory V. Blume* and *Kevin E. Dellett,* of Overland Park, for appellant.

*Dan Biles,* of Gates, Biles, Shields & Ryan, P.A., of Overland Park, for appellee.

Before BRAZIL, C.J., ELLIOTT and KNUDSON, JJ.

BRAZIL, C.J.: Western Video Collectors, L.P., *et al.* (Western), appeals the trial court's order granting summary judgment to Mercantile Bank of Kansas (Mercantile). Western argues that a choice of law provision in its contract with Mercantile required the district court to apply Missouri procedural law, which contains a more lengthy statute of limitations. In the alternative, Western contends its action was timely under the Kansas statute of limitations. Western also argues genuine issues of material fact existed to preclude summary judgment. We affirm.

Western was in the business of selling old western films on videocassettes through television advertising. In November 1988, Western opened two business accounts at Galleria Bank (Galleria), Mercantile's predecessor. The accounts enabled Western to process credit card orders placed by its customers. One account served as the business checking account, and the other was a reserve account from which customer refunds, or charge-backs, were paid.

Western and Galleria executed a written "Merchant Agreement" governing the processing of the credit card transactions.

In January 1989, Galleria notified Western's president, Ken Heard, that it was closing Western's accounts. In February 1989, Galleria informed Heard that it was freezing the funds in the accounts. Without access to the funds in the accounts, Western was unable to purchase its product from its suppliers, and by March 1989, customer complaints began increasing because Western was not filling its orders. Heard opened new accounts at another bank in April 1989.

The Merchant Agreement states: "This agreement shall be governed by the laws of the State of Missouri." Western urges this court to construe this provision to mean the parties agreed that Missouri procedural law would govern any lawsuit based on the agreement. Western contends that the provision is ambiguous because it does not speak to the issue of whether Missouri is intended as the forum state, and therefore must be strictly construed against the drafter of the agreement, Mercantile. We disagree.

The fact that something is not specifically provided for in a contract does not, by itself, make the contract ambiguous. See *Quenzer v. Quenzer*, 225 Kan. 83, 85-86, 587 P.2d 880 (1978). Likewise, in this case, the fact that the provision does not address whether Missouri should be the forum state does not render the agreement ambiguous. Moreover, the provision is not ambiguous on its face; the language used in the provision is clear and cannot reasonably be understood to have multiple meanings. It requires no construction by the court, and thus the strict construction rule is inapplicable. See *Thomas v. Thomas*, 250 Kan. 235, Syl. ¶ 3, 824 P.2d 971 (1992).

Western also makes an unsupported allegation that the individuals who entered into the contract were laymen who may have had a different understanding of the choice of law provision. Western argues it was error to grant summary judgment without receiving testimonial evidence regarding the parties' intent. However, Kansas law provides that "[w]hen a contract is plain and unambiguous, the parties' intent should be determined from the instrument." *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 662, 876 P.2d

1362 (1994). Moreover, to avoid summary judgment, Western has the burden of producing evidence sufficient to establish a genuine issue of material fact concerning the parties' intent. See *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). No such evidence appears in the record. Western's argument fails.

" 'The general rule in respect to limitation of actions is that the law of the forum governs.' " *Muzingo v. Vaught*, 18 Kan. App. 2d 823, 825, 859 P.2d 977 (1993). Statutes of limitation are procedural in nature. See *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722-26, 100 L. Ed. 2d 743, 108 S. Ct. 2117 (1988); *Muzingo v. Vaught*, 18 Kan. App. 2d at 828. In conflict of laws situations, matters of procedure are usually considered to be subject to the law of the forum. Annot., 78 A.L.R.3d 639, 647.

Mercantile cites *Chilson v. Capital Bank of Miami*, 10 Kan. App. 2d 111, 692 P.2d 406 (1984), *aff'd* 237 Kan. 442, 701 P.2d 903 (1985), for the proposition that general choice of law provisions relate only to substantive and not to procedural law. Chilson argued that Florida law provided the governing statute of limitations. Chilson based his argument on a provision in the Kansas Uniform Commercial Code, K.S.A. 84-4-102(2), which stated that in an action for mishandling a negotiable item, "liability . . . is governed by the law of the place where the bank is located." Although basing its decision in the case on other grounds, the court noted in passing that Chilson's contention lacked merit. The court held: "The choice of law provision included in K.S.A. 84-4-102(2) relates only to the rules regarding liability in handling a negotiable item and not to the procedural restrictions on a lawsuit which vary in every state." 10 Kan. App. 2d at 115.

The *Chilson* decision, while not directly on point with the facts of the case at bar, provides support for Mercantile's position. The *Chilson* court interpreted a general choice of law provision and concluded that it did not affect procedural law, such as a statute of limitations.

Although Kansas courts have not addressed this precise question, the prevailing authority indicates that, unless the parties expressly agree to apply the statute of limitations of another state, general choice of law provisions in contracts incorporate only sub-

stantive law and do not displace the procedural law of the forum state. See *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179-80 (3d Cir. 1992); *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142-43 (10th Cir. 1985); *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981). Western cites no authority to the contrary.

In the present case, the Merchant Agreement does not contain an express agreement to apply the Missouri statute of limitations. In accordance with the cited authority, we conclude that the choice of law provision in the Merchant Agreement does not displace Kansas procedural law. Therefore, the district court did not err in applying the Kansas statute of limitations.

Western contends that its action was timely filed under Kansas law. "The district court's interpretation of the statute of limitations for contract actions is a conclusion of law. This court's review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988)." *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, 1090, 880 P.2d 789 (1994).

K.S.A. 60-511(1) provides a 5-year statute of limitations for a cause of action based on a written contract. "The period for filing suit begins to run when the cause of action accrues." *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d at 1089; see K.S.A. 60-510.

Western filed its petition on July 26, 1994. For Western's action to be timely, the 5-year statute of limitations must not have started running before July 26, 1989. The question is whether Western possessed a right to maintain a legal action before July 26, 1989, or whether the right of action did not arise until after July 26, 1989.

Western's petition states the basis for its cause of action. Western alleged that by freezing the bank accounts, Galleria prevented Western from being able to obtain merchandise and fill customer orders. Western also alleged that as a result of the frozen accounts, it could not pay its business expenses in a timely manner. These problems, which form the gravamen of Western's complaint, occurred in February and March 1989. In fact, by April 1989, Western had found another bank and established new accounts to re-

place the ones at Galleria. Clearly, Western's right to maintain a legal action arose before July 26, 1989.

Western points out that Galleria processed customer charge-backs through August 1989. In its petition, Western charged Galleria with failing to provide notice of customer charge-backs and complaints. Western alleged that Galleria should have afforded it the opportunity to address these customer problems.

Neither the Merchant Agreement nor the specific account agreements contain a provision requiring Galleria to give notice of customer charge-backs or complaints. Western admits that the obligation to notify was implied in its agreements with Galleria Bank. K.S.A. 60-512 provides a 3-year statute of limitations for actions based on implied contract obligations. See *Zenda Grain & Supply Co. v. Farmland Industries, Inc.*, 20 Kan. App. 2d 728, 740-45, 894 P.2d 881, *rev. denied* 257 Kan. 1096 (1995).

The last customer charge-back occurred in August 1989, over 3 years prior to the date the action was filed. Therefore, K.S.A. 60-512 bars Western's implied contract claims. It is well established that a trial court decision which reaches the right result will be upheld even though the trial court may have relied upon the wrong ground or assigned erroneous reasons for its decision. *In re Estate of Murdock*, 20 Kan. App. 2d 170, 175, 884 P.2d 749 (1994). Accordingly, the district court did not err in holding the statute of limitations barred Western's claims.

Western argues that because the reserve account remained open until December 1989, Galleria did not breach the contract until the account was actually closed. Western characterizes its contract with Galleria as a "continuous service contract" and cites *In re Estate of Moe*, 240 Kan. 242, 729 P.2d 447 (1986), for the proposition that where a continuous service contract is involved, the statute of limitations does not start to run until the services have ended. Contrary to Western's assertion, however, *Moe* does not establish such a broad rule.

The *Moe* court explained the general contract rule that once performance has begun and prevention of further performance takes place by repudiation or otherwise, a breach exists. 240 Kan.

at 245. The court then noted that an exception to the general rule exists:

"[W]here if there is a single hiring and the term of service of the employee and also the time when his compensation shall become due are not fixed by agreement, and the hiring and service continue without interruption or payment until the death of the employer, the employment, in the absence of the evidence of a general custom or usage, may be deemed continuous. Under such circumstances, the statute of limitations will not begin to run against a claim for compensation until the services have ended." 240 Kan. at 245.

By its own terms, the exception explained in *Moe* applies to employment situations, usually involving one party who promises to provide services to another in exchange for a promise to make payment or leave property at death. See *In re Estate of Moe*, 240 Kan. at 245-48 (discussing three similar cases). The case at bar does not involve such an employment situation, and therefore the exception set forth in *Moe* is inapplicable.

In a related argument, Western cites *Jarnagin v. Ditus*, 198 Kan. 413, 418, 424 P.2d 265 (1967), where the court held that voluntary and deliberate partial payment on a debt will toll the statute of limitations on a action to recover the debt. Western points out that by processing customer charge-backs and keeping the reserve account open, Galleria continued to perform under the Merchant Agreement. Western compares this continued performance to a partial payment on a debt and argues that the statute of limitations should be tolled.

Western's comparison is ill-founded. The *Jarnagin* court explained why partial payment tolls the statute of limitations: "The principle upon which part payment extends the running of the statute is that the debtor intended by such payment to acknowledge and admit the greater debt to be due, and from which the trier of facts would be warranted in finding an implied promise to pay." 198 Kan. at 418. In the case at bar, one cannot reasonably infer that Galleria acknowledged any greater obligation by its continued account activity. Western fails to explain its comparison, and the *Jarnagin* case differs significantly from the instant matter.

Finally, Western cites *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, where the court considered

when a cause of action accrues for breach of a construction contract. The court noted that several jurisdictions had adopted a special rule governing complex construction contracts and under that rule the statute of limitations does not begin to run until the contract is completed. The court held that the rule and the reasons supporting it were in accordance with Kansas law regarding statutes of limitation. The court concluded that in the case before it, the plaintiff could not have successfully maintained an action following a technical breach of the contract, because the ramifications of the technical breach were unknown. The court held that the cause of action did not accrue until the contract was completed and the demand for incentive payments rejected. 19 Kan. App. 2d at 1090-93.

*Kraemer* is distinguishable from the present case. Here, unlike in *Kraemer*, the ramifications of Galleria's breach were known in February and March 1989, when Western's business suffered as a result of the frozen accounts. The fact that the contract was not technically complete until Galleria closed the reserve account in December 1989 does not compel a finding that Western could not maintain a cause of action prior to July 26, 1989. Western's argument fails.

Summary judgment is appropriate when the documents on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c); *Boulanger v. Pol*, 258 Kan. 289, 295, 900 P.2d 823 (1995). The district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party opposing the motion. *Boulanger v. Pol*, 258 Kan. at 295. Similarly, "[i]n reviewing a summary judgment, an appellate court must read the record in the light most favorable to the party who opposed the motion." *Morriss v. Coleman Co.*, 241 Kan. 501, 502, 738 P.2d 841 (1987).

Western contends four material issues of fact existed to preclude summary judgment. First, Western contends Galleria continued to process customer charge-backs without notifying Western or giving Western the opportunity to settle the disputes directly with the customers. Mercantile, however, does not dispute these facts. The

only real issue is whether an implied contract obligation exists requiring Mercantile to refer customer charge-backs and complaints to Western. The existence of an implied contract is a question of law, see *Zenda Grain & Supply Co. v. Farmland Industries, Inc.,* 20 Kan. App. 2d at 737, and does not present a material fact issue. Moreover, as previously discussed, Western's implied contract claim is subject to a 3-year statute of limitations and is therefore untimely.

Second, Western asserts that Galleria failed to give written notice of its intent to close the accounts. The Merchant Agreement states that "EITHER MERCHANT OR BANK MAY TERMINATE THIS AGREEMENT UPON RECEIPT OF WRITTEN NOTICE BY THE OTHER." It is undisputed that Mercantile did not provide written notice of its intent to close the accounts and terminate the Merchant Agreement. Western argues that the district court should have inferred from this fact that the accounts were not closed in January 1989. However, the parties agree that the accounts were not actually closed until June and December 1989. Further, the district court could not reasonably infer from a lack of written notice that Galleria did not freeze the accounts and ultimately force Western to replace the accounts at another bank. Western's argument is not persuasive.

Third, Western contends a material issue of fact existed concerning whether Galleria breached Credit Systems, Inc.'s (CSI) rules and regulations. Western was unable to obtain a copy of the CSI rules and regulations prior to the entry of summary judgment. Western contends the district court acted prematurely and should have allowed Western to procure the CSI rules and regulations.

When opposing a motion for summary judgment, the adverse party must come forward with evidence to establish a dispute as to a material fact. *Mitzner v. State Dept. of SRS,* 257 Kan. at 260; see K.S.A. 60-256(e). Western did not produce the CSI rules and regulations which it claimed Galleria violated. The only evidence Western produced is Heard's affidavit stating that he was attempting to obtain a copy of the CSI rules and regulations. This evidence is not sufficient to establish a dispute of material fact so as to preclude summary judgment.

Finally, Western argues that a material factual issue existed regarding Galleria's actions in keeping the reserve account open. Western points out that Galleria continued to process customer charge-backs, charge service fees, award interest, and provide monthly statements. However, Mercantile does not controvert these facts. Western asks the court to infer from Galleria's actions that Galleria was still performing the contract after July 26, 1989. This issue does not present a question of material fact. Further, even though Galleria continued to perform some of its contractual obligations, Galleria breached the Merchant Agreement by freezing the accounts in early 1989. As previously discussed, Western could have maintained an action based on Galleria's actions in freezing the accounts, and the continued performance of other contractual obligations does not toll the statute of limitations. *Cf. Edward Kraemer & Sons, Inc. v. City of Overland Park,* 19 Kan. App. 2d at 1092-93. Western's argument fails.

The district court did not err in granting summary judgment.

Affirmed.