NOT DESIGNATED FOR PUBLICATION

No. 120,332

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LAURENCE M. JARVIS,
*Appellant*,

v.

NATIONWIDE INSURANCE COMPANY OF AMERICA
and MICHAEL WEARE,
*Appellees*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed September 27, 2019. Affirmed.

*Laurence M. Jarvis*, of Overland Park, appellant pro se.

*Janette C. Gaddie*, of Law Office of Pamela W. Brown, of Overland Park, for appellees.


Before POWELL, P.J., GARDNER, J., and LAHEY, S.J.


PER CURIAM:  Laurence M. Jarvis argues that the district court erred by granting Nationwide Insurance Company of America and Michael Weare's (Appellees') joint motion for summary judgment. Jarvis had sued for unpaid attorney fees based on a structured settlement of a personal injury lawsuit. The district court found that any failure to pay Jarvis' attorney fees is barred by the statute of limitations. We agree.

*Factual and Procedural Background*

In 1994, a two-year-old boy, Robert J. Halbrook Jr. was injured by a dog. Jarvis represented Halbrook during that dog bite case and got a $50,000 default judgment against Michael B. Schaeffer and Sherry Schaeffer. At the time, the Schaeffers were insured under a policy issued by TIG Insurance Company. TIG was represented by Michael Weare. After Jarvis got the default judgment, the parties entered into a settlement agreement in which TIG agreed to pay a sum of money to Jarvis and Halbrook in exchange for their setting aside the default judgment.

The settlement agreement, signed by Jarvis and other interested parties, required the following payments:

> **"2.0 Payments**
>
> "In consideration of the release set forth above, the Insurer on behalf of the Defendant agrees to pay to the individual(s) named below ('Payee(s)') the sums outlined in this Section 2 below:
>
> **"2.1 Payments due at the time of settlement as follows:**
>
> "$8,800.00 paid to Robert J. Halbrook, Sr. and his attorney, Laurence M. Jarvis.
>
> **"2.2 Periodic Payments made to Robert J. Halbrook, Jr. according to the schedule as follows (the 'Periodic Payments'):**
>
> > "$7,500.00 paid on 8/15/2009.
> >
> > "$15,000.00 paid on 8/15/2012.
> >
> > "$22,630.00 paid on 8/15/2016.
> >
> > "All Payments Guaranteed."

(We refer to the periodic payments as an annuity, as do the parties.) The district court approved this settlement agreement and incorporated it into a journal entry of judgment dated May 31, 1995.

TIG sent the first two annuity payments, in 2009 and 2012, directly to Halbrook. According to Jarvis, doing so conflicted with the agreement. Jarvis' brief states that during negotiations, "it was agreed that the initial $8,800.00 up-front attorney fee payment, and the . . . three annuity payments would be sent to Jarvis' law office." Yet no documents of record include any such agreement.

At some point after the first two payments, Nationwide Insurance Co. of America (Nationwide) bought TIG, and Weare then worked for Nationwide. In August 2016, Jarvis called, then wrote Nationwide to notify it of his intent to sue it for unpaid attorney fees. Jarvis states that he did not contact Nationwide or TIG earlier because he was dealing with serious, ongoing medical and personal issues. Also in August 2016, either Nationwide or TIG mailed the third and final annuity payment directly to the Halbrook's assignee—W.L. Lams, LLC. Jarvis then sued Appellees for breach of the settlement agreement's attorney fees provision and for civil conspiracy. Jarvis claimed he was entitled to 40% of each annuity payment made to Halbrook.

Nationwide and Weare moved for summary judgment. They argued that the settlement agreement was unambiguous in requiring payment to Jarvis of an attorney fee of $8,800 only and that those fees had been paid. They argued that Jarvis' attorney fees were unrelated to the annuity payments made to Halbrook. In the alternative, Appellees argued that even if Jarvis' fees were unpaid, Jarvis could not recover them because the statute of limitations had run. Jarvis responded by alleging additional facts and by objecting to Appellees' facts as unsupported by admissible evidence. See Supreme Court Rule 141(a) (2019 Kan. S. Ct. R. 211).

The district court granted summary judgment in favor of Appellees and stated its findings of fact and conclusions of law. It later denied Jarvis' motion to reconsider or amend. Jarvis timely appeals.

*Did the District Court Err in Granting Appellees' Motion for Summary Judgment?*

Jarvis argues that the district court erred in granting summary judgment because genuine issues of material fact exist. These include:

- Whether Jarvis was ever paid attorney fees (either a contingency fee for the initial settlement amount—which equals 40% of the total cash amount—or a 40% contingency fee for each annuity payment);
- when the statute of limitations began to run;
- whether Nationwide was legally bound to pay the third structured annuity payment after it acquired TIG;
- whether Appellees conspired against him to evade paying his fees; and
- whether Halbrook committed fraud by improperly selling or transferring the third annuity payment.

Appellees respond that Jarvis was entitled only to a 40% contingency fee of the initial settlement payment and that Jarvis was paid those fees. Alternately, appellees argue that even if Jarvis was not paid, the statute of limitations on his claim ran before Jarvis sued. Finally, Appellees assert that because Jarvis had no right to any part of the annuity payments, his arguments about conspiracy and fraud, which relate to the annuity payments, are also irrelevant. As explained below, we agree with Appellees.

*Our Standard of Review*

This court's review of the district court's decision is well-settled: ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all

4

facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

We review the district court's ruling on a motion for summary judgment de novo, viewing the facts in the light most favorable to Jarvis—the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the evidence'—in other words, if there is a genuine issue about a material fact—summary judgment should be denied." *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

> *Jarvis was entitled only to $8,800 as a contingency fee for the initial settlement amount.*

Jarvis argues that he not only was entitled to $8,800 as a contingency fee for the initial settlement amount—which equals 40% of the total cash amount—but also was entitled to 40% of each annuity payment. Jarvis asserts that the panel must go outside the four corners of the agreement to determine the true intent of the parties. Jarvis has the burden to show that the contract requires Appellees to pay him the attorney fees he argues are owed. See *Boos v. National Fed'n of State High School Ass'ns*, 20 Kan. App. 2d 517, 524, 889 P.2d 797 (1995) (citing *Bishop & Babcock Sales Co. v. Brogan*, 128 Kan. 779, 783, 280 P. 749 [1929]).

"A settlement agreement is a type of contract and is governed by contract law." *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 40 Kan. App. 2d 123, Syl. ¶ 7, 190 P.3d 989 (2008). This is true even if the settlement agreement is incorporated into a journal entry of judgment. *Boos*, 20 Kan. App. 2d 517, Syl. ¶ 1. This court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the district court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

Whether a written instrument is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). "The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). "The intent of the parties and the meaning of a contract are to be determined from the plain, general, and common meaning of terms used." *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586, 738 P.2d 866 (1987).

> "'"[A]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citations omitted.]"'" *Waste Connection of Kansas*, 296 Kan. at 963.

With those principles in mind, we review the terms of the settlement agreement. Its payment section provides:

> "In consideration of the release set forth above, the Insurer on behalf of the Defendant agrees to pay to the individual(s) named below ('Payee(s)') the sums outlined in this Section 2 below:

6

> **"2.1 Payments due at the time of settlement as follows:**
>
> "$8,800.00 paid to Robert J. Halbrook, Sr. and his attorney, Laurence M. Jarvis."

Those terms are clear and unambiguous.

And nothing in other provisions of that agreement creates ambiguity in the contract's terms relating to payment of Jarvis' attorney fees. Because the contract is unambiguous, we determine the parties' intent from the clear terms of the contract rather than by applying rules of construction designed to find that intent. See *Liggatt*, 273 Kan. at 921. The settlement agreement supports Jarvis' contention that he was owed attorney fees of $8,800 as a 40% contingency fee on the settlement amount of $22,000.

Yet Jarvis contends that the agreement also entitled him to attorney fees of 40% of each annuity or structured settlement payment. Having reviewed the agreement, we find no support for that assertion. Instead, the agreement provides that the annuity payments were solely for the benefit of and to be paid to Halbrook:

> **"2.2 Periodic Payments made to Robert J. Halbrook, Jr. according to the schedule as follows (the 'Periodic Payments'):**
>
> "$7,500.00 paid on 8/15/2009.
>
> "$15,000.00 paid on 8/15/2012.
>
> "$22,630.00 paid on 8/15/2016."

Although the agreement is unambiguous, Jarvis invites us to look at related documents. "'Documents which are executed at different times, but in the course of the same transaction concerning the same subject matter, will be construed together to determine the intent of the parties to the contract.'" *Parsons v. Biscayne Valley Investors, Ltd.*, 23 Kan. App. 2d 718, 723, 935 P.2d 218 (1997). But even if we consider the related documents of record made about the time of the settlement, we find they do not support Jarvis' position.

7

In Jarvis' application to approve the settlement, Jarvis requested the following:

"COMES NOW all of the parties and respectfully move this Court to hear and enter a judgment in favor of plaintiff, ROBERT W. HALBROOK, JR. and against the defendants in the sum of $22,000.00. The parties have negotiated a settlement of all of their disputes and *the aforesaid sum will include attorney's fees and expenses.*

"This amount is fair considering the injuries and medical bills of the minor child. A structure has been agreed upon *which will greatly benefit the minor child, in fact, paying to him* the sums of $7,500 on August 15, 2009; the additional sum of $15,000.00 on August 15, 2012; and the final sum of $22,630.00 on August 15, 2016."

The italicized language shows the following:

- Jarvis intended that the settlement sum of $22,000 include his attorney fees;
- the annuity payments were to benefit the child; and
- the annuity payments were to be paid to the child.

The district court's approval of the settlement agreement shows the same:

"2. The Court finds that the total cash amount of the settlement is $22,000.00, which provides *for $8,800.00 or 40 percent to be paid for and as attorney's fees and expenses to Laurence M. Jarvis*, counsel for Robert W. Halbrook, Jr., the minor child herein. The Court finds this fee is fair, just and reasonable and it is *pursuant to a written contingency fee contract* entered by the parties. Said fee is approved.

"3. The Court further finds that *the minor child shall have a structured settlement which will provide to the child the following guaranteed payments,* to-wit: (a) $7,500.00 on August 15, 2009; (b) the additional sum of $15,000.00 on August 15, 2012; and (c) the additional sum of $22,630.00 on August 15, 2016.

"4. The Court does approve this settlement and finds that it is just and fair in its entirety."

8

Jarvis' affidavit states that during negotiations, "it was agreed that the initial $8,800.00 up-front attorney fee payment, and the . . . three annuity payments would be sent to Jarvis' law office." But this extrinsic or parol evidence is inadmissible to contradict, alter, or vary the terms of the unambiguous written settlement agreement. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d 1238 (2013).

> "The purpose of the parol evidence rule is to prohibit evidence of prior or contemporaneous agreements from being used to define, interpret, or contradict unambiguous terms of a written contract." *Cude v. Tubular & Equipment Services*, 53 Kan. App. 2d 287, 291, 388 P.3d 170 (2016).

See also Black's Law Dictionary 700 (11th ed. 2019) (defining extrinsic evidence as: "Evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement. Extrinsic evidence is usu[ally] not admissible to contradict or add to the terms of an unambiguous document.").

For these reasons, we agree with the district court that the settlement agreement approved attorney fees to Jarvis of only $8,800—40% of the $22,000 cash amount of the settlement.

*Jarvis' breach of contract claim is barred by the statute of limitations.*

Jarvis was owed attorney fees of $8,800 as a 40% contingency fee on the settlement amount of $22,000. He contends and Appellees dispute that he has not been paid any attorney fees for the underlying dog bite case. Jarvis argues this creates a material question of fact precluding summary judgment. But Appellees argue that even if Jarvis has not been paid his attorney fees, Jarvis cannot recover payment now because the statute of limitations has expired.

9

Resolution of this issue requires us to interpret the time limitation set forth in K.S.A. 60-511. Interpretation and application of a statute of limitations is a question of law over which we have unlimited review. *Law v. Law Company Building Assocs.*, 295 Kan. 551, 566, 289 P.3d 1066 (2012).

Jarvis argues that the district court failed to provide enough findings of fact about what date the statute of limitations began to run. Jarvis also asserts that this date is a factual finding that a jury should have decided. Assuming the district court could decide the date as a question of law, Jarvis asserts that the statute of limitations did not begin to run until he first demanded payment of his fees in 2016. He contends that any prior nonpayment was not a material breach because the agreement did not state a specific date on which his fees were to be paid. Appellees counter that the statute of limitations began to run in 1995, on the date the settlement agreement was approved or fully executed. Jarvis filed suit on October 19, 2016.

Contrary to Jarvis' argument, "[t]he district court's interpretation of the statute of limitations for contract actions is a conclusion of law. This court's review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988)." *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, 1090, 880 P.2d 789 (1994).

Both parties agree that K.S.A. 60-511(1) governs this issue. Under that statute, a cause of action based on a written contract is governed by a five-year statute of limitations. "The period for filing suit begins to run when the cause of action accrues." *Edward Kraemer & Sons*, 19 Kan. App. 2d at 1089; see K.S.A. 60-510. Generally, "'a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful conclusion.' *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, Syl. ¶ 7, 470 P.2d 797

10

(1970)." *Edward Kraemer & Sons*, 19 Kan. App. 2d at 1090. For actions regarding recovery of money, the action does not accrue before payment is due. Instead, there must be a right, duty, and default. 19 Kan. App. 2d at 1091.

The district court found that the statute of limitations began to run on May 31, 1995, when the settlement agreement was approved because that agreement said payment was "due at the time of settlement." Our review of the settlement agreement confirms that conclusion. Payment section 2.1 of that agreement states the payment of $8,800 to Jarvis for attorney fees was "due at the time of settlement." No other language in the agreement contradicts that language.

We have also reviewed other documents Jarvis submitted in support of his summary judgment motion, yet we find no language that broadens, contradicts, or casts confusion on the settlement agreement's language that payment of $8,800 to Jarvis for attorney fees was "due at the time of settlement."

Because the settlement agreement gave Jarvis the right to demand payment "at the time of settlement," the statute of limitations for Jarvis' attorney fees began to run on that date—May 31, 1995. So Jarvis had five years after that date—until May 31, 2000—to file a breach of contract suit for nonpayment of the $8,800. His suit, filed in 2016, is untimely.

Although the final annuity payment may not have been made until 2016, that date is irrelevant because Jarvis' sole right to attorney fees was unrelated to the annuity payments. Jarvis makes a conclusory assertion that he had a judicial lien on the annuity payments because the district court approved his 40% contingency fee in the settlement agreement. But he does not explain the factual basis for his belief that a lien exists or cite any authority in support of it. He does not, for example, show that he filed any attorney lien or that the settlement agreement or other agreement required Appellees to pay his

11

attorney fees into court. See generally K.S.A. 7-108 (authorizing the entry of attorney liens for unpaid compensation due from clients from the time of giving written notice of the lien to the adverse party holding money due to the client); K.S.A. 7-109 (permitting the court to determine the amount due on the lien and make an order for distribution of monies after a judgment has been collected or deposited with the clerk of the court). Because Jarvis raises this point only incidentally we deem it to be abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

### *Jarvis' Civil Conspiracy Claim Fails.*

Jarvis also alleged a civil conspiracy to send the annuity payments directly to the child through his grandmother and thus evade payment of his attorney fees. He supported this claim below with letters between Halbrook and Weare, which he contends preclude summary judgment. But because Jarvis had no contractual right to payment of his attorney fees from the annuity amounts, any conspiracy or fraud related to how the annuities were paid is immaterial. Jarvis refers to "the contractual agreements otherwise," but he cites no other contracts or language from them that contradicts the settlement agreement language, and we find none in his favor. Instead, the record shows that Halbrook was the sole payee under the annuity contract.

Jarvis seemingly asserts that the letters between the parties show that Halbrook may have requested payment of the annuities in some form other than that described in the settlement agreement. But, contrary to Jarvis' argument, the letters could also be read as simply including boilerplate language, reminding Halbrook that "[t]he periodic payments cannot be accelerated, deferred, increased, decreased, assigned, sold or transferred." This language is mirrored in the settlement agreement, which the district court approved and Jarvis signed.

12

Jarvis alleges that letters show that changes may have been made to Halbrook's date of birth and address for purposes of receiving annuity payments. But Jarvis fails to properly cite those letters to the record and does not explain how those communications between Weare and Halbrook's grandmother constitute a civil conspiracy. See *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984) (stating elements of a civil conspiracy as: "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'").

Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *Stoldt*, 234 Kan. at 967. "While civil conspiracy is a separate, actionable tort, in order to prove conspiracy, the plaintiff would also have to show the underlying tort was committed." *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist*., 29 Kan. App. 2d 746, 754, 31 P.3d 970 (2001). The underlying tort or wrong here is unclear. Jarvis makes rumblings about Halbrook's "direct fraud," but if fraud is the underlying wrong, the allegations against Appellees fail to show Halbrook committed fraud, as is necessary to show a prima facie case of civil conspiracy. Instead, the assertions about a conspiracy and fraud are conclusory and unsupported by the record.

Nor does Jarvis show how these alleged changes affect his claim for attorney fees. In this regard, the district court ruled "there was no obligation by [Weare's] employer, Nationwide, to make any further payments to [Jarvis] other than what was ordered to be paid in 1995. So there can be no conspiracy to preclude that from happening." We agree that because Jarvis has shown no right to attorney fees arising out of the annuity payments, Jarvis' argument about a conspiracy regarding the annuity payments becomes immaterial. He cannot show that he suffered any damages as a proximate result of the conspiracy, even if he could show the other necessary elements of that claim. See *Stoldt*, 234 Kan. at 967 (listing damages as an element of civil conspiracy).

13

Lastly, if the wrong underlying the alleged civil conspiracy is not fraud but the nonpayment of Jarvis' attorney fees of $8,800, Jarvis' civil conspiracy count is then subject to the underlying statute of limitations for breach of written contract. *Meyer*, 29 Kan. App. 2d at 754-55 (finding the civil conspiracy count is subject to the statute of limitations for the underlying wrong). As discussed above, that five-year statute ran in 2000. When the underlying wrong is time barred, the civil conspiracy claim is time barred as well. *Jarvis v. Wood*, No. 117,790, 2018 WL 5852581, at *12 (Kan. App. 2018) (unpublished opinion).

We find no genuine issue of material fact relating to the nonpayment of Jarvis' attorney fees arising from the dog bite case. Therefore, the district court was correct to grant summary judgment.

Affirmed.