VASILI D. DUMBADZE, Appellant, *v.* EUGENE E. LIGNANTE,
Respondent, Impleaded with Others.

Limitation of actions — accounting — six-year Statute of
Limitations applies to action for accounting where there is no
claim of an express trust and either an arrangement to collect
and hold money or fraud is alleged — demand in first and dis-
covery in second case necessary to start running of statute —
erroneous dismissal of complaint in action for accounting on
ground cause of action was barred by six-year Statute of
Limitations.

1. Whether a complaint in an action for an accounting is considered
as alleging an arrangement to collect and hold money for the plaintiff
or as alleging fraud, the six-year Statute of Limitations applies, no
claim being made of an express trust. In the former case, however,
a demand would be necessary to start the statute running (Civ. Pr.
Act, § 15) and in the latter case the cause of action is not deemed to
have accrued until a discovery by the plaintiff, or the person under
whom he claims, of the facts constituting the fraud. (§ 48, subd. 5.)

2. Where the complaint in such an action may be taken as stating
that one of the defendants and later his assignee, the defendant,
respondent, acting under agreement undertook as agent or attorney
to collect money belonging to plaintiff and hold it for him, a demand
would be necessary by plaintiff to start the statute running or a
knowledge of facts entitling him to make a demand. On the other
hand, if it states a cause of action in fraud, in that the action of the
assignor in assigning the claim to defendant, respondent, and of the
latter in taking and keeping the money were an attempt to cheat the

plaintiff, then the right to sue would not accrue until the plaintiff knew or should have known the facts. In either event, the date of payment would not be the date from which the Statute of Limitations would run. It would be the time when the plaintiff could or should have made a demand, or the time when he knew or should have known of the fraud, and it was error to dismiss the complaint on the ground that the cause of action was barred by the six-year Statute of Limitations.

*Dumbadze* v. *Lignante*, 216 App. Div. 554, reversed.

(Submitted October 22, 1926; decided November 23, 1926.)

Appeal from a judgment, entered May 4, 1926, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed two orders of Special Term denying motions by defendant, respondent, for a dismissal of the complaint as to him and granted such a motion.

*Amos J. Peaslee* and *Emily Marx* for appellant. The respondent was the assignee of the legal title to the fund. He took the title subject to all equities in favor of the plaintiff. The complaint seeks to enforce those equitable rights against the legal owner of the fund, and, hence, the cause of action alleged is essentially and exclusively of an equitable character which was intended to be governed by the ten-year Statute of Limitations. (*Lobsitz* v. *Lissberger Co.*, 168 App. Div. 840; *Selwyn & Co.* v. *Waller*, 212 N. Y. 507; *Tyndall* v. *Pinelawn Cemetery*, 198 N. Y. 217; *Schantz* v. *Oakman*, 163 N. Y. 148; *Marvin* v. *Brooks*, 94 N. Y. 71; *Trustees of Union College* v. *Wheeler*, 61 N. Y. 88; *Barnes* v. *Alexander*, 232 U. S. 117; *Hofferbergh* v. *Duckett*, 175 App. Div. 480; *Pratt* v. *Commercial Trust Company of New York*, 105 Misc. Rep. 324; *Powell* v. *Freeport Bank*, 200 App. Div. 432.) The Statute of Limitations did not in any event commence to run against the plaintiff until he learned of the collection of the fund by Lignante in the fall of the year 1923. (*Taylor* v. *Benham*, 5 How. Pr. 233; *Lightfoot* v. *Davis*,

198 N. Y. 261; *Newton* v. *Porter,* 69 N. Y. 133; *Wakulaw* v. *State Bank,* 124 Misc. Rep. 172.)

*Joseph Fischer* and *Frederick Hemley* for respondent. The action is barred by the six-year Statute of Limitations. (*Keyes* v. *Leopold,* 241 N. Y. 189; *Minion* v. *Warner,* 238 N. Y. 413; *Mills* v. *Mills,* 115 N. Y. 80; *Hermes* v. *West-chester Racing Assn.,* 213 App. Div. 147; *New York & Boston Despatch Express Co.* v. *Carroll,* 170 App. Div. 197; *Fuller* v. *Morian,* 85 Misc. Rep. 529; *Holt* v. *Hopkins,* 63 Misc. Rep. 537; *Brown* v. *Brown,* 83 Hun, 160; 146 N. Y. 385; *Matter of Waite,* 43 App. Div. 296; *Wood* v. *Young,* 141 N. Y. 211.) The complaint does not state a cause of action in equity against respondent. (*Model Building & Loan Association* v. *Reeves,* 236 N. Y. 331; *Wood* v. *Young,* 141 N. Y. 211; *Montgomery* v. *Shear,* 182 App. Div. 238; *Morrison* v. *Chapman,* 63 Misc. Rep. 195; *Marvin* v. *Brooks,* 94 N. Y. 71, 80; *Conger* v. *Judson,* 69 App. Div. 121.)

CRANE, J. The court below has determined that this action is barred by the six-year Statute of Limitations; and that is the point on this appeal. Judgment was granted on motion under rule 107, subdivision 6, and is reported below (216 App. Div. 554).

We must, therefore, analyze the complaint.

The defendants are Eugene E. Lignante, a citizen and resident of New York, Anton Antonovich Knaap, of Warsaw, Poland, and Vasili Davidovich Zimdin of Berlin, Germany.

A syndicate was formed, including the plaintiff, Knaap and Zimdin, which procured a contract at Petrograd, Russia, for two million shrapnel shells. These three entered into an agreement to share their profits equally. The contract was assigned to the Canadian Car & Foundry Co., Ltd., under date of February 12, 1915. On February 15th of the same year an agreement in writing was made, of which the Canadian Car & Foundry

Co. had notice, by which the plaintiff and the defendants Knaap and Zimdin should together receive seventy cents per shell, or $1,400,000.

On or about March 5, 1915, the plaintiff and the defendants Knaap and Zimdin entered into an agreement with the Robert Dollar Co. whereby said company was constituted agent to collect the moneys due these three gentlemen from the foundry company.

On April 9, 1915, the defendant Knaap, purporting to act for the plaintiff and defendant Zimdin, directed the Robert Dollar Co. to make distribution, pursuant to a letter annexed as Exhibit 5. The complaint says that this was a fraud by Knaap and unauthorized. On May 8, 1915, the plaintiff and Zimdin notified the Robert Dollar Co. from Russia of the fraud. Knaap's power-of-attorney to act for them was revoked.

On May 18, 1915, these three people entered into another agreement modifying their respective shares, and gave to one Howe, a representative of the Robert Dollar Co. at Petrograd, a letter containing new instructions for distribution of the profits. This is Exhibit 6. A later letter, October 8, 1915, Exhibit 7, showed the interests of the plaintiff and defendants Knaap and Zimdin in the funds.

According to these agreements, the plaintiff was to receive the following amounts: (1) One-third interest in the sum of $102,500, to be held in escrow; (2) one-third interest in the sum of $44,642.83, to be paid to Knaap, as trustee for the other two; (3) a one-third interest in the sum of $5,357, the remainder of the money.

On February 27, 1916, the plaintiff was imprisoned in Petrograd, and Colonel Gerasim Ivanovich Setchinsky was appointed guardian of his property. This guardian gave to Knaap power-of-attorney, Exhibit 8, to collect the money due the plaintiff. This power-of-attorney, signed by Colonel Gerasim Ivanovich Setchinsky, reads as follows:

" In the capacity of Attorney of the Guardianship over the property of Vasili Davidovich Dumbadze who has been deprived by law of all civil rights, and acting under power of attorney with the right of delegation issued to me by David Dumbadze, guardian over the property of Vasili Dumbadze, I authorize you by these presents to receive from the Robert Dollar Company in the United States, and from the Canadian Car & Foundry Company in Canada, moneys due to Vasili Dumbadze, for which purpose I empower you to confirm wheresoever and in a manner you may find necessary the former instructions of Vasili Dumbadze * * *. All that you may lawfully do under this power of attorney I shall accept as true and shall not dispute or gainsay."

On *February 27, 1917*, Knaap, purporting to act for the plaintiff, transferred to the defendant Lignante the rights of the plaintiff " pursuant to the said power of attorney from the said Colonel Setchinsky to a one-third interest in the said sums of $102,500, $44,642.83 and $5,357."

The instrument of transfer, dated February 27, 1917, was signed by "Anton A. Knaap, W. D. Dumbadze, by Anton A. Knaap, Attorney in fact, acting under power from Colonel Setchinsky certified by the Notary Public at Petrograd August the 18th, 1915." After the recitals, it reads:

" Now, THEREFORE, in consideration of $102,500.00 received by the undersigned, A. A. Knaap and W. D. Dumbadze, the latter acting by and through the said A. A. Knaap, as attorney in fact, I do hereby agree to and do hereby assign, transfer and set over unto Eugene E. Lignante of the City of New York, the said 102,500 /557,314 of each amount retained by the said Robert Dollar Company, which by the terms of said letter of Oct. 8 /21 /1915, the said Company was directed to hold in escrow to the credit of the parties hereto and W. D. Zimdin until a majority agreement had been reached by them as to its final disposal."

The complaint states: " The said Lignante accepted and received the said assignments with full knowledge and notice of the representative and fiduciary capacity in which the said Knaap was acting respecting the rights in the property of the plaintiff in the said sums of $102,500, $44,642.83 and $5,357."

On or about March 6, 1917, the Canadian Car & Foundry Co. paid to the defendant Lignante one-third interest of Knaap, " acting as attorney and trustee for the property of plaintiff pursuant to said power of attorney from Colonel Setchinsky," in the total sum of $50,833.28.

On October 13, 1917, plaintiff was restored to all his legal rights, and the guardianship was terminated, but he remained in ignorance of this payment to Lignante until the fall of 1923, although diligently endeavoring to ascertain the facts. Lignante appropriated the funds to his own use.

The plaintiff asks the defendant Lignante to account to him for the money so received. Lignante is the only defendant against whom judgment is asked.

This action was commenced June 9, 1925. Payment to Lignante was made on March 6, 1917. If the six-year Statute of Limitations applies, and runs from the day of payment, it expired March 6, 1923. The action was two years late.

That the six-year Statute of Limitations applies, no claim being made of an express trust, is settled by *Keys* v. *Leopold* (241 N. Y. 189) and *Minion* v. *Warner* (238 N. Y. 413, 418). The point which these cases did not determine, however, is when upon the facts here the Statute of Limitations begins to run. It has been assumed that March 6, 1917, the date of payment of Lignante, started the statute running.

Whether we consider the complaint as alleging an arrangement to collect and hold the money for the plaintiff or as alleging fraud this conclusion is wrong.

In the former case a demand would be necessary to

start the statute running according to section 15 of the Civil Practice Act, and in the latter case under section 48, subdivision 5, the cause of action is not deemed to have accrued until a discovery by the plaintiff or the person under whom he claims of the facts constituting the fraud.

Section 15 of the Civil Practice Act reads:

" Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete except in one of the following cases:

" 1. Where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends."

The complaint is not as definite and as certain as it might be. It may be taken as stating that Knaap and later his assignee, Lignante, acting under agreement, undertook as agent or attorney to collect the plaintiff's share of the money paid to the Robert Dollar Company and hold it for him.

All through the complaint it appears that Knaap, by a special written agreement, was a trustee for the plaintiff. The nature of the trust is not disclosed. We find Knaap referred to as " acting as attorney and trustee for the property of plaintiff pursuant to the said power of attorney from Colonel Setchinsky." It is stated that Lignante received these funds " in a fiduciary capacity." What was this trust or fiduciary capacity? Was it to hold the money until the plaintiff could receive it? Dumbadze was in jail and his property taken by the Russian government. Dumbadze's property under the order of that government had passed to Colonel Setchinsky.

When we turn to the exhibits, we also find a peculiar set of facts. The power of attorney given by Setchinsky

to Knaap was not to collect the money and pay it over to Setchinsky. Setchinsky was to have only $30,000 forwarded to him. The balance was to be held by Knaap. For what purpose? So also the formal power of attorney, or agreement between Knaap and Dumbadze, recites that this money coming from the Dollar Company was to " remain in escrow " until majority agreement is reached by Knaap, Dumbadze and Zimdin; that an agreement has been reached; that all the money " shall be paid over to said Knaap and disposed of by him as his sole property; " that Lignante has paid $102,500 as consideration for this agreement, and concludes: " We hereby authorize and direct the said Robert Dollar Company to pay the said moneys over to the said Lignante, his legal representatives and assigns as and when the same will be received by the said Robert Dollar Company."

If Knaap was to hold these moneys until Dumbadze got out of prison and could receive them in America, keeping them from the Russian government, he was not obliged to pay them over immediately to Dumbadze in Russia. A demand by Dumbadze would, therefore, be necessary in order to start the statute running, or a knowledge of facts entitling Dumbadze to make a demand. If Knaap held the funds under such a trust, or as attorney for such a purpose, Lignante held them in the same way. (*Newton* v. *Porter*, 69 N. Y. 133.) Of course if Lignante was merely an agent to collect the money and pay it over at once or within a reasonable time to Dumbadze, then *Wood* v. *Young* (141 N. Y. 211) would apply. No demand would be necessary and the statute would run from the time of collection, whether Dumbadze knew of it or not. We think, however, that the complaint states more than the ordinary relationship of debtor and creditor.

On the other hand, the complaint may reasonably be construed as stating an action in fraud. If the action of Knaap in assigning the claim to Lignante and of Lignante in taking and keeping the money were an attempt to

cheat the plaintiff out of his money then the right to sue would not accrue until the plaintiff knew or should have known of the facts.

Whichever view, however, we take of the complaint, the date of payment to Lignante, March 6, 1917, would not be the date from which the Statute of Limitations would run. It would be the time when the plaintiff could or should have made a demand, or the time when he knew or should have known of the fraud.

The complaint, therefore, should not have been dismissed. Upon a trial it may appear that the plaintiff either knew or should have known of the facts earlier than 1923 and that his claim may be barred. Upon the facts as pleaded, however, he is entitled to be heard.

The judgment of the Appellate Division should be reversed and the orders of the Special Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur.

Judgment accordingly.