■ MARILYN RATTNER, Appellant, et al., Plaintiff, v JAMES H. YORK et al., Respondents.—In an action, *inter alia,* for a judgment declaring null and void a purported agreement, and for an accounting, the plaintiff Marilyn Rattner appeals from an order of the Supreme Court, Nassau County (Levitt, J.), dated February 22, 1990, which granted the defendants' motion to dismiss the complaint.

Ordered that the order is affirmed, with costs.

Abraham Samuel Yarmusch died on October 2, 1967. He was survived by his wife, Tillie Yarmusch, and by six children. The plaintiff Marilyn Rattner and defendants James York and David Yarmeisch are three of the children. The other three children were deceased at the time Rattner commenced this action in September 1989.

At the time of Yarmusch's death, he and the two children who have been named as defendants, James York and David Yarmeisch, were the owners of the corporate defendants Yorkbro Realty Corp. (hereinafter Yorkbro) and York Bros. Wholesale Hardware Co., Inc. (hereinafter Hardware). Each of the three owned one-third of the issued and outstanding capital stock of Yorkbro and Hardware.

The will of Yarmusch provided, in pertinent part, that "[i]n the event that my beloved wife TILLIE YARMUSCH shall survive me, then I do hereby give, devise and bequeath onto my said wife TILLIE YARMUSCH, all the rest, residue and remainder of my estate including all property of whatsoever nature of which I die seized, possessed or entitled whether real, personal or mixed, and wheresoever the same may be situate and she shall be entitled to exclusive use and enjoyment of same for the balance of her life". The will further provided that "[u]pon the death of my said wife Tillie, I do hereby give, devise and bequeath all that shall remain of the said rest, residue and remainder of my estate to our issue then surviving and they shall share and share alike". The will also stated that "[i]f any

of my said issue shall have predeceased me or my wife TILLIE, then I do hereby give, devise and bequeath that share to which said predeceased issue would have been entitled had he survived both of us to his issue per stirpes and not per capita".

The parties do not dispute that by virtue of these provisions a life estate was created in Tillie Yarmusch. They also do not dispute that by virtue of the provisions of the will, the plaintiff Rattner became a remainderman with a one-sixth interest in her father's estate upon the death of Tillie. Consequently, under the will, the plaintiff Rattner, upon the death of Tillie, would have been entitled to one-sixth of one-third of the issued and outstanding capital stock of Yorkbro and Hardware.

The plaintiff Rattner alleged in her complaint, in which she named Tillie as "Another Person Similarly Situated" and joined her as a plaintiff, that late in 1968, James York and David Yarmeisch told her that because of their father's death they wished to sell Yorkbro and Hardware, and that in order to facilitate the sale, the signatures of Tillie and all the children would be needed. Rattner was allegedly told not to worry, and that she would be a rich woman. She was then allegedly given only the signature page which contained the signatures of her mother and all her siblings. She allegedly signed the page without seeing the whole document or knowing the contents thereof. She knew, however, that Yorkbro and Hardware were never sold by her brothers because her husband, who was employed by Hardware, continued to work for Hardware until approximately 1984. Rattner alleged that in December of 1988 she heard rumors that Hardware was going to be sold for an amount in excess of $6,000,000, and that Yorkbro was being retained for income and appreciation. When she allegedly asked her brother, James York, about the alleged sale, he told her that she had no interest in Yorkbro and/or Hardware because she signed away her interest in November 1968. Subsequently, James York handed her a two-page document, the second page of which was the signature page she signed. The document is an agreement which provides that defendants James York and David Yarmeisch shall pay the sum of $250 per week to Tillie Yarmusch (their mother) for the rest of her life, and that in consideration of those payments, Tillie, Rattner and the three other siblings (now deceased) "hereby grant all their right, title and interest to the shares of stock in York Bros. Wholesale Hardware Co., Inc. and Yorkbro Realty Corp., that they may receive from the

estate of Abraham Samuel Yarmusch to James R. York and David Yarmusch". Rattner commenced this action for a judgment declaring the agreement null and void, for an accounting, and for the imposition of a constructive trust on the assets of the corporations. Rattner also sought the same relief with respect to the assets of Aluma Trim Inc. and E.Z. Roll Manufacturing Co., which she alleged are entities acquired by James York and David Yarmeisch with assets and income from Yorkbro and Hardware.

James York and David Yarmeisch responded to the complaint with a motion to dismiss. They argued, *inter alia,* that the complaint failed to state a cause of action *(see,* CPLR 3211 [a] [7]), that they had a defense based on documentary evidence (CPLR 3211 [a] [1]), and that the action is barred by the applicable Statute of Limitations (CPLR 3211 [a] [5]). They argued that Rattner knowingly signed away her rights because the contents of the agreement had been discussed by the mother and all the children at a meeting in Rattner's home, that the whole document (and not only the signature page) had been given to Rattner for her review prior to her signing it, and that Rattner had joined her mother Tillie as a plaintiff without Tillie's knowledge and consent.

The court granted the motion and dismissed the complaint on the grounds, *inter alia,* that Tillie was improperly joined as a plaintiff, and that the action was barred by the Statute of Limitations. We affirm.

There is no evidence that Tillie consented to being joined as a plaintiff in this action. Neither is there any evidence that she authorized Rattner to act on her behalf. Consequently, the court properly dismissed the complaint to the extent that it named Tillie as a plaintiff, and to the extent that it purports to assert causes of action on her behalf.

There is no doubt that Rattner was a remainderman under the will of her father. Indeed, her interest in the future estate was vested. "[I]f you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto,* have an immediate right of possession, then the remainder is vested" *(Moore v Littel,* 41 NY 66, 80). It is also settled law that "[r]emainders may be disposed of, devised and bequeathed by persons entitled thereto, before being received by them" *(Matter of Weaver,* 253 App Div 24, 28, *affd* 278 NY 605). The complaint alleges that Rattner was given the signature page only and she signed it in November 1968. Between 1968 and 1984, a period of 16 years, Rattner admittedly knew

that her brothers did not sell either Yorkbro or Hardware. Yet, she never inquired of her brothers as to the status of the sale of the businesses. If Rattner's allegations are construed as making out a case of constructive fraud, the cause of action accrued at the time the alleged fraud was committed, i.e., in November 1968 and it would be barred by the six-year Statute of Limitations provided in CPLR 213 (1), which period began to run at the time the fraud was committed (see, *509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48; *Mattera v Mattera*, 125 AD2d 555).

On the other hand, if Rattner's complaint is construed as alleging a cause of action based upon actual fraud, it is governed by the Statute of Limitations provided for under CPLR 213 (8), which runs six years from the date the alleged fraud was committed, or two years from the date she discovered, or with reasonable diligence could have discovered, the fraud (see, *Quadrozzi Concrete Corp. v Mastroianni*, 56 AD2d 353). Ordinarily, an inquiry as to the time a plaintiff could with reasonable diligence have discovered the alleged fraud is a mixed question of law and fact (see, *Trepuk v Frank*, 44 NY2d 723). However, a complaint should be dismissed upon a motion where it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud (see, *Dombadze v Lignante*, 244 NY 1; *Azoy v Fowler*, 57 AD2d 541). In the period of 20 years after Rattner signed a document she alleges she believed was to facilitate the sale of the corporations, she never made any inquiries about the alleged sale, even though she admittedly knew that her brothers did not sell the corporations. In fact, Rattner's husband was employed in the business until 1984. The evidence conclusively shows that if Rattner had exercised due diligence she would have discovered the alleged fraud more than two years prior to September 1989, when she commenced this action. We conclude, therefore, that Rattner's action is time-barred whether it is based on constructive fraud or actual fraud.

We also note that Rattner does not allege that her brothers concealed from her facts which would apprise her of the fact that the corporations had not been sold. Neither does she allege that her brothers made continuing representations which were not true. Consequently, the principles of equitable estoppel do not preclude the defendants from invoking the Statute of Limitations as a defense (cf., *Simcuski v Saeli*, 44 NY2d 442).

We find the plaintiff Rattner's other contentions to be

meritless in view of our foregoing conclusions. Kooper, J. P., Sullivan, Lawrence and Rosenblatt, JJ., concur.