■ NATIONAL STATES ELECTRIC CORP., Respondent-Appellant, v CITY OF NEW YORK, Appellant-Respondent. [640 NYS2d 186] ■

In 1980, the plaintiff was the successful bidder on a contract to improve the public address system in 112 New York City subway stations. Pursuant to the contract, which was awarded by the defendant City of New York (hereinafter the City), the plaintiff was to be paid $5,774,000. By January 31, 1986, the work was substantially complete. However, when the parties were unable to resolve various disputes that arose concerning the contract, the plaintiff, by summons and complaint dated October 28, 1987, commenced this action. The plaintiff alleged (1) that it was owed a balance of $41,381.68 on the contract; (2) that it performed "additional work" on the contract in the sum of $1,609,814.70; (3) that it sustained damages in the sum of $5,811,781.92 due to the City's misrepresentation of material facts and the City's "wrongful[ ], deliberate[ ] and/or negli-

gent[ ]" delay and prevention of the contracted work; and (4) that, because of the misrepresentations and wrongful acts by the City, the plaintiff incurred additional premiums for bonds and insurance in the sum of $82,322.30. By answer dated December 9, 1987, the City denied the material allegations of the complaint and interposed several affirmative defenses. The eighth affirmative defense alleged that the plaintiff's second, third, and fourth causes of action were barred because it failed to comply with the written notice provisions of the contract. Further, by motion dated March 29, 1994, the City, *inter alia,* sought to amend its answer to assert several new defenses and counterclaims. The first of the City's proposed counterclaims was that the plaintiff obtained the contract in violation of General Municipal Law § 103. The City also moved for summary judgment dismissing the complaint and for partial summary judgment on its eighth affirmative defense and first proposed counterclaim. We now affirm the Supreme Court's order insofar as it denied those branches of the City's motion which were for partial summary judgment on its eighth affirmative defense and the first proposed counterclaim and for summary judgment dismissing the complaint, and granted the branch of the City's motion which was to amend its answer.

As a counterclaim and complete defense to this action, the City alleges that the plaintiff obtained the contract at issue in violation of General Municipal Law § 103. Accordingly, the City argues, the plaintiff should suffer the same harsh penalties imposed upon bidders that obtain public contracts by, *inter alia,* collusion, fraud, or circumvention of the competitive bidding process (*see, D'Angelo v Cole,* 67 NY2d 65; *S. T. Grand, Inc. v City of New York,* 32 NY2d 300; *Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187; *Gerzof v Sweeney,* 16 NY2d 206). These penalties include the denial of recovery pursuant to either the terms of the contract or in *quantum meruit,* and the restitution of all monies paid pursuant to the contract (*see, Gerzof v Sweeney, supra*). However, issues of fact preclude granting summary judgment on this theory.

Pursuant to General Municipal Law § 103, contracts for public work involving an expenditure of more than $7,000 (currently $20,000), with certain exceptions not here applicable, must be awarded to the "lowest responsible bidder" after public bidding (*see,* General Municipal Law § 103 [1]). Pursuant to the invitation to bid on the contract at issue, one requirement of a "responsible bidder" was that it possess "free and liquid assets equal to at least thirteen (13) per centum of the total amount of the Total Aggregate Bid". A corporate bidder was

also required to have a net worth equal to "at least the amount of free and liquid assets required for the contract". The plaintiff's bid was $5,774,000. Thus, at the time of its bid in April 1980, the plaintiff needed a net worth of at least $750,620 (13% of $5,774,000) to qualify as a responsible bidder. The plaintiff claimed a net worth in excess of $10,000,000. However, it was later discovered that the books and records of the plaintiff were being falsified between 1972 and 1980. Accordingly, it is now clear, and the plaintiff does not dispute, that the net worth figure claimed by it in 1980 was not accurate. However, this does not necessarily mean that the plaintiff was not a responsible bidder. Rather, the net worth of the plaintiff cannot be determined from the record before this Court.

The City argues that the deposition testimony of Stuart Freeman, who became president of the plaintiff after the bid at issue had already been made, supports a conclusion that the net worth of the plaintiff in 1980 was between $0 and a deficit of $10,321,000. However, we do not find Freeman's testimony on this issue to be as clear as claimed by the City. Moreover, even if Freeman's testimony supported such a conclusion, it is hearsay. Freeman admitted that he had no personal knowledge of the facts and that he did not speak to any of the parties allegedly involved in the falsification of the plaintiff's books. Indeed, the source of Freeman's knowledge is not clear from the record. Thus, the Supreme Court did not err in denying the City's motion for summary judgment on the first counterclaim of its amended answer.

The plaintiff argues that the City's first counterclaim should be dismissed because it is barred by the six-year Statute of Limitations for fraud (see, CPLR 213 [8]). However, even assuming, arguendo, that the counterclaim may be properly characterized as one sounding in fraud, a question of fact exists as to the date that the City did or should have discovered the alleged fraud (see, CPLR 213 [8]). In addition, to the extent that the first counterclaim is interposed to offset any claims by the plaintiff under the contract, the Statute of Limitations is not a bar to recovery (see, CPLR 203 [c]; Matter of Fisher Park Lane Co. [SCM Corp.], 40 NY2d 788).

As a complete defense to the second, third, and fourth causes of action in the complaint, the City alleged that the plaintiff failed to comply with the notice provisions of the contract. Pursuant to Chapter III, Article VII, Paragraph (y) of the contract: "If the Contractor shall claim compensation for any damage sustained by reason of any act, neglect, fault or default of the City or the Authority or their agents, he shall within

ten (10) days after the sustaining of such damage, make a written statement to the Engineer of the nature of the damage sustained. On or before the fifteenth day of the month succeeding that in which any such damage shall have been sustained, the Contractor shall file with the Engineer an itemized statement of the details and amount of such damage and, unless such statement shall be made and filed as thus required, his claims for compensation may in the discretion of the Authority be forfeited and invalidated and he shall not be entitled to payment on account of any such damage". This Court has strictly construed identical provisions, holding that they afford a defendant (here the City) an opportunity to verify the damages allegedly sustained (see, American Std. v New York City Tr. Auth., 167 AD2d 494). Moreover, such provisions permit the defendant to take early steps to mitigate or avoid damages, to engage in contemporaneous record keeping, and to avoid the inevitable credibility contests that arise as to alleged oral modifications of a contract (see, Huff Enters. v Triborough Bridge & Tunnel Auth., 191 AD2d 314). Here, however, questions of fact as to whether the plaintiff complied with the notice provisions prevent summary judgment in favor of the City on this theory.

In response to interrogatories served by the City concerning notice, the plaintiff submitted documentary evidence falling generally into three categories. The first was numerous letters from one of its subcontractors to the City giving notice of various damages sustained during construction. The City has failed to proffer evidence sufficient to support a prima facie showing that such notice was inadequate under the contract. Contrary to the City's arguments on appeal, we attach no relevant significance to the fact that the alleged notice was supplied by a subcontractor of the plaintiff rather than by the plaintiff directly. The second category of documents submitted by the plaintiff consisted of several internal memoranda of the City recounting discussions and agreements between the parties concerning, inter alia, the performance of additional work and the price to be paid therefor. Whether these memoranda are evidence of either affirmative exercises by the City of its discretion under the contract to excuse the failure to provide written notice of damages or fully negotiated and authorized directives for additional work is a question of fact to be resolved at trial. The final category of documents submitted by the plaintiff consisted of several memoranda from the City to the plaintiff, inter alia, directing it to perform certain additional work and setting forth the price to be paid therefor. We find that these affirmative directives concerning negotiated and agreed to

changes in the terms of the contract do not fall within the purview of the notice provisions of the contract (*see,* 22 NY Jur 2d, Contracts, §§ 259-266; *Albert Saggese, Inc. v Town of Hempstead,* 64 NY2d 908; *Savin Bros. v State of New York,* 62 AD2d 511, *affd* 47 NY2d 934). To hold otherwise would compel the absurd result of requiring the plaintiff to serve written notice on the City of the City's own directives. Moreover, such a holding would satisfy none of the underlying purposes for requiring written notice (*see, Savin Bros. v State of New York, supra*). We reject the plaintiff's overarching argument that no damages were ascertainable on any of its claims until the contract had been substantially completed on January 31, 1986, and, therefore, no notice was required until 10 days after that date. This argument is belied, *inter alia,* by the very evidence submitted by the plaintiff in support of its claimed damages. Further, there is no merit to the plaintiff's argument that its claimed damages, even if not properly noticed, were not barred because the City failed to manifest some affirmative intent not to exercise its discretionary power under the contract to waive the requirement of written notice. Clearly, by defending this action the City has manifested such an intent.

The City also sought partial summary judgment dismissing all of the plaintiff's causes of action to recover damages for work performed or damages incurred subsequent to May 1, 1982. This argument is based on the City's assertion that, as of that date, the plaintiff assigned all of its rights and interest in the contract to a third party, the National Mansfield Corporation (*see, McKinney & Son v Lake Placid 1980 Olympic Games,* 61 NY2d 836). However, this argument clearly lacks merit. Scrutiny of the relevant documents reveals merely that the National Mansfield Corporation was offered by the plaintiff and accepted by the City as a subcontractor on the project. The fact that the plaintiff remained the party primarily responsible for the contract during all relevant periods is clearly evidenced by the significant dealings between the plaintiff and the City long after the alleged assignment is said to have occurred. Indeed, certain of the City's counterclaims in its amended answer seek to hold the plaintiff responsible for the acts of National Mansfield Corporation.

Finally, the plaintiff argues that the court improvidently exercised its discretion in permitting the City to amend its answer because, *inter alia,* none of the defenses or counterclaims has merit. However, the arguments proffered by the plaintiff do not support a finding that the additional defenses and counterclaims are "patently insufficient on [their] face"

(*Newton v Aqua Flo Co.,* 106 AD2d 919, 920). Accordingly, the Supreme Court did not improvidently exercise its discretion in permitting the City to amend its answer. Rosenblatt, J. P., Ritter, Copertino and Goldstein, JJ., concur.