■ TOWN OF POUGHKEEPSIE, Respondent, v THOMAS ESPIE et al., Appellants. [840 NYS2d 600]—

In an action to recover damages for violation of General Municipal Law § 103, fraud, and breach of contract, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Dutchess County (Pagones, J.), dated July 12, 2006, as denied those branches of their motion which were pursuant to CPLR 3211 (a) (5) and (7) to dismiss the complaint as time-barred, or in the alternative, to dismiss the causes of action alleging a violation of General Municipal Law § 103 and fraud for failure to state a cause of action, and to dismiss the breach of contract cause of action as barred by the statute of frauds.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion which was pursuant to CPLR 3211 (a) (5) to dismiss the causes of action alleging a violation of General Municipal Law § 103 and fraud as time-barred, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

On September 4, 2002 the Town of Poughkeepsie commenced an action in the United States District Court for the Southern District of New York (hereinafter the federal action) against, among others, Thomas Espie and Betty Espie alleging, among other things, a violation of the competitive bidding requirements of General Municipal Law § 103, common-law fraud, and breach of contract in connection with a contract for the purchase of, and renovations for, a warehouse owned by the Espies. The Town intended to use the warehouse as a new police and court facility.

In both the federal action and the instant action, the Town alleged that the Espies and others engaged in a scheme to defraud the Town of money by securing the payment of bribes in order to garner support in steering the Town to agree to lease the Espies' warehouse as the police and court facility, with an option to purchase the property, and to engage the Espies to renovate the property.

On March 15, 1995 the Town Board of the Town of Poughkeepsie (hereinafter the Town Board) authorized the execution of a lease for the warehouse, including improvements, and an option to purchase the warehouse for the sum of $5,350,000. The lease was executed on April 20, 1995. The monthly rental fee was set in the sum of $48,750, commencing on May 1, 1995, and continuing for a term of 15 years. The lease included a rider assigning an apparently oral contract to renovate the warehouse (hereinafter the renovation agreement) to the Espies, and setting forth the terms under which the Espies would undertake the renovation project. The Town alleged in both the federal action and the instant action that the renovation agreement should have been let out for competitive bidding pursuant to General Municipal Law § 103, and that the Espies participated in a scheme to structure the lease to circumvent the competitive bidding requirements.

The lease provided that it would terminate when the Espies conveyed title to the warehouse to the Town, which would occur upon the Town's exercise of an option to purchase the warehouse contained in the lease. On May 30, 1995 the Town executed a purchase and sale agreement, thus enabling it to exercise the option to purchase the warehouse for the sum of $5,350,000. At some point after accepting the assignment of the renovation agreement, the defendants hired the contractor Roy C. Knapp & Sons, which commenced renovations on the warehouse.

On July 17, 1996 the Town Board adopted a resolution authorizing the execution of an amended lease agreement. The amended lease agreement increased the monthly rental fee to the sum of $80,000, extended the term of the lease to 20 years, and increased the purchase price of the property from the sum of $5,350,000 to the sum of $6,950,000. The amended lease agreement was executed on July 18, 1996.

The Town alleged that the Espies represented that the increase was necessary for unexpected renovation needs, including heating, ventilation, conversion of a pole barn on the property into an automobile maintenance center, installation of a more extensive telecommunications system than the extant system, and the purchase of an emergency power backup system. The Town alleged that these representations were false when made and made with the intent to defraud the Town of money.

The Town alleged that, upon completion of the renovations to the warehouse, it immediately exercised the option to purchase. The parties closed on the sale of the warehouse on September 18, 1996.

On January 27, 2006 the United States District Court (Brieant, U.S.D.J.), after revisiting its prior holdings in connection with the Espies' motion to dismiss the federal complaint (*see Town of Poughkeepsie v Espie*, 402 F Supp 2d 443, 445 [2005]), dismissed, without prejudice, the Town's claims for relief alleging a violation of General Municipal Law § 103, fraud, and breach of contract, so that they could be recommenced in state court. Thereafter, within six months after dismissal of the federal action, and on or about March 9, 2006, the Town commenced the instant action against the Espies in the Supreme Court, Dutchess County, asserting the same three causes of action as had been alleged in the federal action (*see* CPLR 205 [a]). The Supreme Court denied in its entirety the Espies' motion to dismiss the complaint.

The Supreme Court erred in denying that branch of Espies' motion which was to dismiss, as time-barred, the first cause of action predicated on a violation of General Municipal Law § 103. Neither the statute nor case law provides a limitations period governing a competitive bidding violation cause of action asserted by a municipality against a vendor in connection with the award of a public works contract. Therefore, "it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought" (*Solnick v Whalen*, 49 NY2d 224, 229 [1980]; *see Hartnett v New York City Tr. Auth.*, 86 NY2d 438, 443-444 [1995]). The substance of the claim involves both common-law breach of contract and fraud principles. The Town seeks to recover damages because the renovation agreement allegedly was not awarded to the lowest bidder, and the Espies allegedly participated in a fraudulent scheme to structure a sham lease with an option to purchase in order to accomplish this result (*see Albion Indus. Ctr. v Town of Albion*, 62 AD2d 478, 482-483 [1978]). Accordingly, the six-year catch-all limitations period of CPLR 213 governs this claim (*see* CPLR 213 [1]; *see generally National States Elec. Corp. v City of New York*, 225 AD2d 745, 747 [1996]).

In applying this limitations period, we conclude that the competitive bidding violation cause of action accrued on April 20, 1995 when the renovation project was assigned to the Espies as part of the lease agreement. "A cause of action accrues, for the purpose of measuring the period of limitations, 'when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court' " (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 221 [1996], quoting *Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 175 [1986]).

The General Municipal Law § 103 cause of action accrued when the renovation agreement was formally executed on April 20, 1995 since it was on this date that the renovation agreement was allegedly steered to the Espies instead of being duly let out for bidding to other potential contractors. The Town, as a party to the contract, was in a position to discover improprieties in connection with the award and pricing of the renovation agreement. At that time, the Town was on notice that the Espies might not have provided the lowest price for renovation services, and fraud might have been at play. All of the facts necessary to the Town's General Municipal Law § 103 cause of action had become manifest by April 20, 1995. Since the Town did not commence the federal action until September 4, 2002, the Town's General Municipal Law § 103 cause of action is time-barred under the governing six-year limitations period (*see* CPLR 213 [1]).

The Supreme Court also erred in not granting that branch of the Espies' motion which was to dismiss, as time-barred, the second cause of action predicated on fraud. A cause of action alleging fraud must be commenced within six years after the date on which the cause of action accrued or within two years after the time the plaintiff could with reasonable diligence have discovered the fraud (*see* CPLR 213 [8]; *Espie v Murphy*, 35 AD3d 346, 347 [2006]). A cause of action alleging fraud accrues at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence (*see Northridge Ltd. Partnership v Spence*, 246 AD2d 582, 583 [1998]; *Ghandour v Shearson Lehman Bros.*, 213 AD2d 304, 305-306 [1995]). A plaintiff's ability to discover an alleged fraud depends on whether he or she "possessed knowledge of facts from which the fraud could reasonably have been inferred" (*Northridge Ltd. Partnership v Spence, supra* at 583).

The Town's fraud cause of action accrued on July 18, 1996 when the Town executed the amended lease agreement, which it alleges was falsely represented as necessary for unexpected renovation costs. The Town Board approved the significant price increase a day earlier. By this time the Town knew, or should have known, whether the alleged renovation costs were legitimate by duly investigating the matter (*see Prestandrea v Stein*, 262 AD2d 621, 622-623 [1999]). Moreover, contrary to the Town's contention, the injury occurred on July 18, 1996 upon the execution of the amended lease agreement, when the Town bound itself to terms increasing the option purchase price (*see generally Matter of Neidich*, 290 AD2d 557, 558 [2002]; *Matter of Blake*, 282 AD2d 905, 906 [2001]; *Pommer v Trustco Bank*,

183 AD2d 976, 977 [1992]). Measured from the July 18, 1996, accrual date, the fraud cause of action is time barred, as it was not interposed until September 4, 2002, beyond the governing six-year limitations period (*see* CPLR 213 [8]).

The third cause of action is predicated on breach of contract. The Town alleged that "[p]ursuant to the agreement between it and [the Espies], all renovations were to be performed in a good and workmanlike fashion." The Town alleged that the Espies breached this agreement. Subsequent to the transfer of title on September 18, 1996, the building became damaged by cracks in the concrete slab under the building and sinking of the slab caused by a settling of the underlying soil. The Town further alleged that the condition of the building violated certain provisions of the Building Code in effect at the time. This, according to the Town, resulted in the need to make costly and unanticipated repairs.

To the extent that the Town claims that the Espies breached a guarantee that the renovations would be performed in a certain manner, "[n]o warranty attaches to the performance of a service . . . [i]f the service is performed negligently, the cause of action accruing is for that negligence. Likewise, if it constitutes a breach of contract, the action is for that breach" (*Aegis Prods. v Arriflex Corp. of Am.*, 25 AD2d 639, 639 [1966]; *see Milau Assoc. v North Ave. Dev. Corp.*, 42 NY2d 482, 488 [1977]).

Claims for damages for breach of construction contracts are generally governed by a six-year limitations period (*see* CPLR 213 [2]; *cf. Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 395 [1977]), and accrue when the contract in question was substantially completed (*see State of New York v Lundin*, 60 NY2d 987, 989-990 [1983]; *Suffolk County Water Auth. v J.D. Posillico, Inc.*, 267 AD2d 301, 302 [1999]).

Here, the record is unclear as to the time when the renovations on the warehouse were substantially completed. If the renovations were substantially completed before September 4, 1996, then the commencement of the federal action on September 4, 2002 would render the breach of contract cause of action time-barred, based on the governing six-year limitations period (*see* CPLR 213 [2]). The opposite result would occur, however, if the renovations were substantially completed on or after September 4, 1996. The record on appeal is insufficient to clarify this factual issue. Accordingly, the breach of contract cause of action cannot be dismissed as time-barred as a matter of law at this juncture (*see United States Fid. & Guar. Co. v Delmar Dev. Partners, LLC*, 22 AD3d 1017, 1021 [2005]; *Trustees of Columbia Univ. in City of N.Y. v Gwathmey Siegel & Assoc. Architects*,

167 AD2d 6, 12 [1991]; *cf. State of New York v Lundin, supra* at 990-991).

Similarly, the breach of contract cause of action cannot be dismissed at this time based on the statute of frauds. There is no indication in the record that the alleged renovation agreement was reduced to a writing. Thus, whether the renovation agreement is enforceable is governed by the statute of frauds (*see* General Obligations Law § 5-701 [a]). While an oral agreement between parties will be barred by the statute of frauds when it cannot, by its own terms, be performed within one year from the day of its making (*see* General Obligations Law § 5-701 [a] [1]), the agreement will fall outside the statute of frauds where there has been full performance of the contract by both parties within one year of the making of the contract (*see Halpern v Shafran*, 131 AD2d 434, 436 [1987]; *Montgomery v Futuristic Foods*, 66 AD2d 64, 68 [1978]; *Tyler v Windels*, 186 App Div 698, 700 [1919], *affd* 227 NY 589 [1919]). Here, the record is unclear as to the time when the alleged oral renovation agreement was made. Although full performance by both parties had already occurred by the closing of the purchase and sale agreement on September 18, 1996, it is unclear whether this occurred within one year of the making of the alleged oral renovation agreement, so as to take the renovation agreement outside the statute of frauds (*cf. Halpern v Shafran*, 131 AD2d 434, 436 [1987]).

The Espies' remaining contentions are without merit. Schmidt, J.P., Crane, Krausman and Dickerson, JJ., concur.