Seidenfeld v Zaltz (2018 NY Slip Op 04585)





Seidenfeld v Zaltz


2018 NY Slip Op 04585


Decided on June 20, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 20, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOHN M. LEVENTHAL
SANDRA L. SGROI
JOSEPH J. MALTESE, JJ.


2016-01209
 (Index No. 28790/10)

[*1]Sheila Berniker Seidenfeld, appellant, 
v
Helene Zaltz, et al., respondents.


Jeffrey E. Michels, New York, NY, for appellant.
Barry S. Seidel, Forest Hills, NY, for respondents Helene Zaltz and Israel Zaltz.
Leonard R. Sperber, Garden City, NY (Michelle S. Stein of counsel), for respondent Adelle Lawrence.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract and to impose a constructive trust, the plaintiff appeals from an order of the Supreme Court, Kings County (Ellen M. Spodek, J.), dated June 3, 2015. The order, insofar as appealed from, upon renewal, in effect, vacated a prior determination in an order of the same court dated June 2, 2014 (Jack M. Battaglia, J.), denying the motion of the defendant Adelle Lawrence for summary judgment dismissing the second amended complaint insofar as asserted against her and denying that branch of the separate motion of the defendants Helene Zaltz and Israel Zaltz which was for summary judgment dismissing the second amended complaint insofar as asserted against them, and thereupon granted the defendants' respective motions.
ORDERED that the order dated June 3, 2015, is affirmed insofar as appealed from, with one bill of costs.
Max and Elsie Rokeach had four children: the plaintiff, Sheila Berniker Seidenfeld, Leonard Rokeach, and the defendants Helene Zaltz and Adelle Lawrence. In 1982, Max died intestate. A primary asset of Max's estate was real property in Brooklyn (hereinafter the Brooklyn property). That property consisted of two living spaces, and a meeting space that was used as a synagogue. One of the living spaces was occupied by Max and Elsie.
In the course of administering Max's estate, the children agreed that Sheila, Leonard, and Adelle would each waive his or her intestate share of Max's estate in favor of their mother, Elsie, in exchange for her promise that she would leave them each 16.5% of the Brooklyn property upon her death. It was further agreed that, because Elsie could not live alone, Helene and her husband Israel Zaltz (hereinafter together the Zaltzes), would occupy the second living space in the Brooklyn property and make improvements to it and that, if they did so until Elsie's death, they would receive the remaining 50% of the property. This understanding was memorialized in a 1986 agreement between Elsie and the Zaltzes, although Sheila, Leonard, and Adelle also signed as interested parties (hereinafter the 1986 agreement). The Brooklyn property was legally held by Elsie and the Zaltzes in 50% shares as tenants-in-common.
In 1996 and 1997, Elsie made 12 deposits of $10,000 each to brokerage accounts. The memo section of each of the checks indicates that they were gifts to Helene, Adelle, or Adelle's sons. According to Sheila, in mid-2005, Adelle and Israel both told her that, upon Elsie's death, a portion of the assets in one brokerage account, which was held in the names of Helene and Adelle, would go to Sheila.
In 2000, Elsie transferred her 50% interest in the Brooklyn property to Helene. In 2002, Helene told Sheila that the purpose of the transfer was to improve Elsie's Medicaid eligibility, but that Sheila and her siblings would nevertheless receive their 16.5% shares of the property upon Elsie's death. In January or February of 2005, Helene sold the Brooklyn property, and she and Israel purchased a home in Lawrence. Elsie moved to an assisted living facility and, in August 2005, she died. Elsie's will did not mention the 1986 agreement, and Helene declined to disburse 16.5% of the proceeds of the sale of the Brooklyn property to Sheila. Helene and Adelle also declined to transfer the proceeds of the brokerage account to Sheila.
In 2009, Sheila, as co-executor of Elsie's estate, commenced a turnover proceeding in the Surrogate's Court, Queens County, to recover the proceeds of the sale of the Brooklyn property and the brokerage accounts. The Zaltzes and Adelle separately moved for dismissal of Sheila's petition. In an order dated August 26, 2010, the Surrogate's Court granted the motions and directed dismissal of Sheila's petition on the ground that each of her causes of action was either time-barred or constituted a dispute between living persons which was not within the jurisdiction of the Surrogate's Court. Sheila appealed that order to this Court, which affirmed the dismissal (see Matter of Rokeach, 101 AD3d 1022).
In November 2010, Sheila commenced this action against Adelle and the Zaltzes, seeking a share of the Brooklyn property and the proceeds of one of the brokerage accounts. She also alleged that, when Max died, Helene and Adelle told her that the net value of his estate was only approximately $32,000. Sheila alleged that she waived her share of Max's estate in favor of Elsie based on that representation. She claimed that Max's estate actually was worth a far greater amount and that, had she known the true value of the estate, she would not have waived her share of it. Sheila's complaint, and her second amended complaint, which is the subject of this appeal, set forth
causes of action, inter alia, sounding in breach of contract, quasi-contract, conversion, and fraud, and to impose a constructive trust.
Adelle and the Zaltzes separately moved for summary judgment dismissing the second amended complaint insofar as asserted against each of them. In an order dated June 2, 2014, the Supreme Court denied both motions on the ground that they were technically deficient, with leave to renew. Adelle and the Zaltzes separately moved for leave to renew the respective motions. In an order dated June 3, 2015, the court granted leave to renew, and, upon renewal, found that the majority of Sheila's causes of action were barred by the doctrine of res judicata based upon the previous decisions of the Surrogate's Court and this Court. To the extent that the causes of action were not barred by res judicata, the court determined that they were barred by the applicable statutes of limitations and, in any case, were without merit. The court therefore directed dismissal of the second amended complaint in its entirety. Sheila appeals.
The doctrine of res judicata, or claim preclusion, provides that "a valid final judgment bars future actions between the same parties on the same cause of action" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347; see Matter of Hunter, 4 NY3d 260, 269; Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485). In general, a judgment for or against a person in his or her representative capacity is not res judicata against that person in his or her personal capacity (see Matter of Sullivan, 289 NY 323, 326; Leonard v Pierce, 182 NY 431, 432; Magid v Sunrise Holdings Group, LLC, 155 AD3d 717, 718; Specialized Realty Servs., LLC v Maikisch, 123 AD3d 801, 802). However, where a litigant's individual interests are affected by prior litigation in which he or she participated in a representative capacity, res judicata will apply to a subsequent action commenced in the individual's personal capacity (see Matter of Clamp, 193 AD2d 601, 602; Weiner v Greyhound Bus Lines, 55 AD2d 189, 193-194).
Here, although Sheila's turnover proceeding in the Surrogate's Court was ostensibly brought on behalf of Elsie's estate, had she prevailed, Sheila, in her personal capacity as an heir of Elsie's estate, would have been the primary beneficiary of the proceeding. The purpose of the turnover proceeding was to return to the estate assets that had been disbursed to other family members prior to Elsie's death, which would have increased Sheila's share in Elsie's estate. As this Court stated on the prior appeal, the petition sought to recover Elsie's interest in the Brooklyn property and the assets she had transferred to the brokerage accounts (see Matter of Rokeach, 101 AD3d at 1023). We noted that Sheila sought the turnover based on, inter alia, "theories of fraud, conversion, and constructive trust," the same theories she has pleaded in this action (id. at 1025). Although Sheila commenced that proceeding in a representative capacity, it was primarily her own individual interests that would have been affected had she prevailed, and her claims in that action were substantially the same as those she asserts here. Accordingly, we agree with the Supreme Court's determination that the doctrine of res judicata applied to bar the first and fourth through eleventh causes of action to the extent they were asserted in and decided by the Surrogate's Court and this Court (see Matter of Clamp, 193 AD2d at 602; Weiner v Greyhound Bus Lines, 55 AD2d at 193-194).
To the extent that the causes of action were not barred by res judicata, the Supreme Court correctly determined that they were time barred and/or that Sheila failed to state a viable cause of action.
The first through seventh causes of action related to Sheila's claim that she was entitled to a share of the proceeds from the sale of the Brooklyn property. The first and second causes of action sound in breach of contract, and the seventh cause of action alleging unjust enrichment is quasi-contractual. Each of these claims is based upon the 1986 agreement. However, the 1986 agreement did not expressly or impliedly create any contractual obligation between Helene and any of her siblings. The duties ran to and from Elsie and her children, but not between the children, and Helene undertook no duty to distribute Elsie's share to her siblings. Any alleged oral promise Helene made to Sheila to honor Elsie's commitment in the 1986 agreement was gratuitous and legally unenforceable and was not supported by any consideration (see Loft Rest. Assoc. v McDonagh, 209 AD2d 482, 483). Thus, Sheila's claim, if any, to enforce the 1986 agreement should have been asserted against Elsie when Elsie transferred her interest in the property to Helene. Because Sheila cannot establish any breach by Helene, we need not determine whether the statute of limitations bars these claims. Accordingly, the Supreme Court properly determined that summary judgment dismissing the first and second causes of action sounding in breach of contract was warranted.
We also agree with the Supreme Court's determination to grant dismissal of the seventh cause of action, which alleged unjust enrichment. Assuming that Helene received assets to which Sheila was entitled (see Corsello v Verizon N.Y., Inc., 18 NY3d 777, 790; Trotta v Ollivier, 91 AD3d 8, 12; Cruz v McAneney, 31 AD3d 54, 59), Helene received those assets in 2000. The six-year limitations period would therefore have expired in 2006, four years prior to the commencement of this action (see CPLR 213[2]; Mosab Constr. Corp. v Prospect Park Yeshiva, Inc., 124 AD3d 732, 733; Chi Kee Pang v Synlyco, Ltd., 89 AD3d 976, 977). To the extent that the second amended complaint may be read as seeking relief under a theory of promissory estoppel, Sheila has failed to identify any act that she took or refrained from taking in reliance on Helene's alleged 2002 promise and, therefore, has failed to plead an essential element of promissory estoppel (see Agress v Clarkstown Cent. School Dist., 69 AD3d 769, 771; see also Schwartz v Miltz, 77 AD3d 723, 724; First Union Natl. Bank v Tecklenburg, 2 AD3d 575, 577). In any event, the applicable six-year limitations period would have expired in 2008 (see CPLR 213[1]; see generally Enzinna v D'Youville Coll., 84 AD3d 1744, 1744-1745; Carlingford Ctr. Point Assoc. v MR Realty Assoc., 4 AD3d 179, 179-180).
Similarly, we agree with the Supreme Court's determination to grant dismissal of the third cause of action, which alleged tortious interference with contract, as time-barred since, assuming that Sheila was a party to the 1986 agreement, the Zaltzes alleged interference in persuading Elsie to transfer her interest occurred in 2000. Thus, the three-year limitations period [*2]applicable to this cause of action expired in 2003 (see CPLR 214[4]; Pursnani v Stylish Move Sportswear, Inc., 92 AD3d 663, 664; Chung v Wang, 79 AD3d 693, 694).
The fourth cause of action alleged conversion of Sheila's interest in the Brooklyn property. A cause of action alleging conversion is subject to a three-year statute of limitations (see CPLR 214[3], [4]; Collymore v Secretary of Hous. & Urban Dev., 22 AD3d 703). Here, the cause of action would have accrued, at the latest, upon Elsie's death in August 2005. Thus, having been asserted in November 2010, this cause of action was time-barred.
The fifth cause of action alleged that Helene committed fraud with respect to the Brooklyn property, since she promised to honor Elsie's commitment to give Sheila a 16.5% interest in the Brooklyn property upon Elsie's death. An action for fraud must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it" (CPLR 213[8]; see CPLR 203[g]; Coleman v Wells Fargo & Co., 125 AD3d 716; House of Spices [India], Inc. v SMJ Servs., Inc., 103 AD3d 848, 849; Benedict v Whitman Breed Abbott & Morgan, 77 AD3d 867, 869; Oggioni v Oggioni, 46 AD3d 646, 648). Here, even assuming that Helene's 2002 statement was fraudulent, the six-year limitations period would have expired in 2008. Alternatively, the two-year discovery period would have begun, at the latest, when Helene failed to transfer an interest upon Elsie's death in 2005, in which case the limitations period expired in 2007. In either event, this cause of action was time-barred.
The sixth cause of action sought to impose a constructive trust on the proceeds of the sale of the Brooklyn property. "To obtain the remedy of a constructive trust, a party is generally required to establish four factors, or elements, by clear and convincing evidence: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment flowing from the breach of the promise" (Sanxhaku v Margetis, 151 AD3d 778, 779; see Kaprov v Stalinsky, 145 AD3d 869, 871; Giammona v 72 Mark Lane, LLC, 143 AD3d 941, 943). However, "these factors should be applied flexibly" (Cruz v McAneney, 31 AD3d at 59), bearing in mind that the doctrine of constructive trust is to be applied broadly "in response to all human implications of the transaction, to remedy whatever knavery ingenious wrongdoers can invent, to give expression to the conscience of equity, and to satisfy the demands of justice" (Nastasi v Nastasi, 26 AD3d 32, 38; see Sanxhaku v Margetis, 151 AD3d at 779; Kaprov v Stalinsky, 145 AD3d at 871). Thus, a constructive trust may be imposed wherever the required elements are "substantially present" (Marini v Lombardo, 39 AD3d 824, 825).
Assuming that Helene's alleged 2002 statement that she would honor Elsie's commitment fulfills the requirements of a "promise," Sheila has not identified any transfer that was made in reliance on that promise. She also did not allege that Elsie directed Helene to distribute the proceeds of the Brooklyn property prior to transferring her interest to Helene or that Helene made any such a promise to Elsie. Accordingly, we agree with the Supreme Court's determination directing dismissal of the sixth cause of action, as it failed to state a cause of action for the imposition of a constructive trust on the proceeds of the Brooklyn property.
The eighth through eleventh causes of action related to the brokerage account. The eighth cause of action alleged fraud. "The elements of a cause of action to recover damages for fraud are a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages'" (Lee Dodge, Inc. v Sovereign Bank, N.A., 148 AD3d 1007, 1008, quoting Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559; see Levin v Kitsis, 82 AD3d 1051, 1054). Since the alleged fraudulent statements were made in 2005, the cause of action, asserted in a 2010 complaint, would not be time-barred (see CPLR 213[8]). However, Sheila had no legal right in the brokerage account and did not identify any action which she would or could have taken or refrained from taking had she not relied on the alleged misstatements. Accordingly, the eighth cause of action failed to state a viable claim alleging fraud.
The ninth cause of action, which alleged conversion of the funds in the brokerage account, would have accrued, at the latest, upon Elsie's death in August 2005. Accordingly, the [*3]Supreme Court correctly concluded that the cause of action, asserted in 2010, was barred by the three-year limitations period (see CPLR 214[3], [4]; Collymore v Secretary of Hous. & Urban Dev., 22 AD3d 703). In any event, Sheila cannot establish that she had any right to the funds in the account or that Helene or Adelle had any duty to transfer any such funds to her (see Pappas v Tzolis, 20 NY3d 228, 234; Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 50; Petrone v Davidoff Hutcher & Citron, LLP, 150 AD3d 776, 777; Gym Door Repairs, Inc. v Astoria Gen. Contr. Corp., 144 AD3d 1093, 1096; Quadrozzi v Estate of Quadrozzi, 99 AD3d 688, 690-691).
The tenth cause of action sought to impose a constructive trust on funds in the brokerage account. However, Sheila has not alleged that Elsie's transfers to the brokerage account were made in reliance on any promise by Helene and/or Adelle (see Sanxhaku v Margetis, 151 AD3d at 779; Kaprov v Stalinsky, 145 AD3d at 871; Giammona v 72 Mark Lane, LLC, 143 AD3d at 943). Indeed, the memo entries on the checks indicate that the transfers were gifts to Helene, Adelle, and others. Accordingly, Sheila failed to state a cause of action for the imposition of a constructive trust.
We agree with the Supreme Court's determination that the eleventh cause of action, which alleged unjust enrichment, should be dismissed as time-barred. Assuming that Adelle and Helene received funds to which Sheila was entitled (see Corsello v Verizon N.Y., Inc., 18 NY3d at 790; Trotta v Ollivier, 91 AD3d at 12; Cruz v McAneney, 31 AD3d at 59), they received those funds in 1996 and 1997, so the six-year limitations period would therefore have expired in 2003 and 2004 (see CPLR 213[2]; Mosab Constr. Corp. v Prospect Park Yeshiva, Inc., 124 AD3d at 733; Chi Kee Pang v Synlyco, Ltd., 89 AD3d at 977).
The twelfth cause of action alleged that Helene and Adelle engaged in fraud by misrepresenting the value of Max's estate. "A cause of action based upon fraud accrues, for statute of limitations purposes, at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence'" (Coleman v Wells Fargo & Co., 125 AD3d at 716, quoting Town of Poughkeepsie v Espie, 41 AD3d 701, 705; see Oggioni v Oggioni, 46 AD3d at 648). Although the question of when a plaintiff could "with reasonable diligence have discovered the alleged fraud" is ordinarily "a mixed question of law and fact," summary dismissal is appropriate "where it conclusively appears that the plaintiff has knowledge of facts which should have caused [him or] her to inquire and discover the alleged fraud" (Rattner v York, 174 AD2d 718, 721; see House of Spices [India], Inc. v SMJ Servs., Inc., 103 AD3d at 849; Saphir Intl., SA v UBS PaineWebber Inc., 25 AD3d 315, 316). Although "mere suspicion" will not substitute for knowledge of the fraudulent act (Erbe v Lincoln Rochester Trust Co., 3 NY2d 321, 326), a plaintiff may not " shut his [or her] eyes to facts which call for investigation'" (Saphir Intl., SA v UBS PaineWebber Inc., 25 AD3d at 316, quoting Schmidt v McKay, 555 F2d 30, 37 [2d Cir]; see Shannon v Gordon, 249 AD2d 291, 292).
The defendants' alleged misstatements regarding Max's estate, which, as the defendants note, Sheila has not identified with particularity (see CPLR 3016[b]; Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d at 559; Lee Dodge, Inc. v Sovereign Bank, N.A., 148 AD3d at 1008; Greenberg v Blake, 117 AD3d 683, 684; Parekh v Cain, 96 AD3d 812, 816-817), occurred in the 1980s. As the Supreme Court noted, Sheila had a duty to use reasonable diligence to investigate the status of Max's estate before waiving her intestate share thereof, and her failure to do so cannot be attributed to the defendants (see Saphir Intl., SA v UBS PaineWebber Inc., 25 AD3d at 316; Shannon v Gordon, 249 AD2d at 292). Even assuming that the statements and Sheila's waiver of her share of Max's estate were contemporaneous with the execution of the 1986 agreement, the statute of limitations would have expired in approximately 1992. Accordingly, we agree with the Supreme Court's determination that this cause of action was time-barred.
Finally, Sheila's argument that the doctrine of equitable estoppel bars the invocation of the statute of limitations by Adelle and the Zaltzes is without merit (see Putter v North Shore Univ. Hosp., 7 NY3d 548, 552-553; Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 106-107; Zumpano v Quinn, 6 NY3d 666, 673; Wallace v BSD-M Realty, LLC, 142 AD3d 701, 703; North Coast Outfitters, Ltd. v Darling, 134 AD3d 998, 999; Reiner v Jaeger, 50 AD3d 761, 762; Matter of Janis C. v Christine T., 294 AD2d 496, 497; see also Loft Rest. Assoc. [*4]v McDonagh, 209 AD2d at 483).
MASTRO, J.P., LEVENTHAL, SGROI and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court